## GODFREY *v*. CITY OF FLINT.

1. BAILMENT—CLASSES.

Bailments are generally classified as those for the sole benefit of the bailor, the sole benefit of the bailee or those for the benefit of both parties.

2. SAME—BENEFIT OF BOTH PARTIES—DEFINITION.

A bailment for the benefit of both parties is one wherein a person gives to another the temporary use and possession of property, other than money, for a reward, the latter agreeing to return the same to the former at a future time.

3. SAME—ASCERTAINMENT OF RIGHTS, DUTIES AND LIABILITIES.

To ascertain the rights, duties and liabilities of parties to a bailment, it is usually necessary to determine whether the bailment is lucrative, for the mutual benefit of both parties, or whether it is for the sole benefit of one party, the other remaining uncompensated, and in determining whether or not there is a lucrative bailment, the nature and amount of compensation are immaterial.

4. SAME—TERMINATION OF RELATION OF MASTER AND SERVANT BETWEEN CITY AND AIRPLANE LESSEE.

Bailment relation between plaintiff airplane owner's lessee and city in whose airport hangar the airplane was stored held, not to have ceased upon termination of relation of master and servant when lessee, who had been acting as manager of city airport in return for $50 a month paid by city, right to store his leased airplane, and use of flying field for commercial flying, was transferred to a Civil Works Administration payroll but continued to manage and use the airport, collect rentals for city officials for planes stored and store plaintiff's airplane in the hangar.

5. SAME—MUTUAL BENEFIT—AIRPLANE STORAGE AT MUNICIPAL AIRPORT.

Evidence in action for loss of plaintiff's airplane while stored in defendant city's hangar held, sufficient to permit a jury to find that relation between plaintiff's bailee and city at time airplane was destroyed by fire was that of a mutual benefit bailment.

6. SAME—FORM OF CONTRACT.

Matters of form are usually of slight significance in determining validity of bailment contracts so long as lawful possession of the property is in the bailee under circumstances requiring him to return or account for it.

7. SAME—BAILEE'S DUTY OF CARE UNDER MUTUAL BENEFIT BAILMENT.

Duty of bailee in keeping property under a mutual benefit bailment is substantially the same as in a bailment for hire—to keep and preserve the property with ordinary care.

8. SAME—ORDINARY CARE—QUESTION FOR JURY.

   Ordinary care of a bailee under mutual benefit bailment means such care as an ordinarily prudent man would exercise under like circumstances and whether it is exercised is a question of fact for jury under proper instructions.

9. SAME—AIRPLANES—STORAGE IN MUNICIPAL HANGAR—NEGLIGENCE.

   City in whose hangar plaintiff airplane owner's bailee stored plane under a mutual benefit bailment would be liable for ordinary negligence of its employees with respect to loss of plane by fire caused by backfiring of tractor stored beneath wing of plane, hence failure of court to submit to jury question of liability of city on such basis was reversible error.

Appeal from Genesee; Gadola (Paul V.), J. Submitted January 11, 1938. (Docket No. 117, Calendar No. 39,863.) Decided May 4, 1938.

Case by Clarence Godfrey against City of Flint, a municipal corporation, for damages for loss of an airplane by fire. Verdict for plaintiff. Judgment for defendant *non obstante veredicto.* Plaintiff appeals. Reversed with new trial.

*Michelson & Pearlstine,* for plaintiff.

*Hymen Hoffman,* for defendant.

SHARPE, J. This is an action instituted by plaintiff to recover damages for the loss of an airplane stored in a hangar at the city of Flint airport. Plaintiff had verdict, but defendant's motion *non obstante veredicto* was granted. Plaintiff appeals.

In April, 1933, plaintiff was the owner of a three-passenger commercial airplane which he leased to Gordon Helm who stored the same at the airport at Flint. In October, 1933, Helm was engaged by the city of Flint to operate the airport. He was paid $50 per month, had the use of the field for commercial flying, and was permitted to store his airplane

in the hangar. His duties were to take care of the airport, look after the beacon light, keep a log of incoming and outgoing airplanes, telephone weather reports to other airports, and collect rentals and remit the same to the city treasurer.

In December, 1933, the city of Flint received aid from the Federal government for the improvement of the airport. Helm was transferred to the Civil Works Administration payroll and worked 24 hours per week. He continued to store his airplane in the city hangar, to keep the beacon lighted at night, to make a log of incoming and outgoing planes, to telephone weather reports, and to collect rentals. He was never instructed by the city of Flint to discontinue these services nor was he authorized to continue the same.

On January 30, 1934, while the Civil Works Administration project was still in progress, Helm had the airplane stored in one of the city hangars at the airport. The city of Flint owned a tractor and stored the same in the hangar directly under the left wing of the airplane. On the morning in question, a mechanic employed by the city of Flint was instructed to go to the airport for the purpose of starting the tractor. The principal trouble was that the tractor had sticking valves. In attempting to start the motor, the oil was drained from the motor into an open bucket 12 or 14 inches in diameter which was placed under the motor and gasoline was poured into the priming cups. The motor was primed several times by two different employees of the city and in this process gasoline leaked upon the wooden floor. In the process of starting the motor, it back-fired through the carburetor, igniting the gasoline. The fire spread to the gasoline and oil on the floor then to the airplane which was destroyed. Upon two

other occasions the motor had been found difficult to start and had backfired, but no fire had resulted.

Before the cause was submitted to the jury, defendant made a motion for a directed verdict which was reserved. The court instructed the jury that there was no bailment for hire in this case; and submitted the case to them on the second count in plaintiff's declaration, namely, that of a gratuitous bailment. He instructed them that plaintiff must prove defendant's employees were grossly negligent in the attempt to start the tractor and that this gross negligence was the cause of the loss of the airplane. The jury returned a verdict for plaintiff, but the court granted defendant's motion *non obstante veredicto*.

Plaintiff appeals and contends that the trial court was in error in his refusal to submit the cause to the jury upon the first count in the declaration, namely, that a mutual benefit bailment existed between plaintiff's lessee and the defendant, and defendant was liable for the destruction of plaintiff's property through ordinary negligence of defendant's employees; and that there was ample evidence to sustain the jury's verdict that the defendant's employees were guilty of gross negligence.

It is conceded that a bailment relation exists between the parties in this case.

In 6 Am. Jur. p. 145, § 14, it is said that:

"Bailments are now generally classified under three heads: (1) Those for the sole benefit of the bailor; (2) those for the sole benefit of the bailee; and (3) those for the benefit of both parties."

"Bailment for the benefit of both parties thereto has been defined as one wherein a person gives to another the temporary use and possession of property, other than money, for a reward, the latter

agreeing to return the same to the former at a future time." 8 C. J. S. p. 243, § 8.

"To ascertain the rights, duties, and liabilities of the parties, it is usually necessary to determine whether a bailment is lucrative, for the mutual benefit of both parties, or whether it is for the sole benefit of one party, the other remaining uncompensated." 6 Am. Jur. p. 147, § 18.

"In determining whether or not there is a lucrative bailment, the nature and amount of the compensation are immaterial, as the law will not inquire into its sufficiency or the certainty of its being realized by the bailee." 6 Am. Jur. p. 149, § 21.

For cases holding that the bailment was mutual see: *Knights* v. *Piella,* 111 Mich. 9 (66 Am. St. Rep. 375) ; *Henry* v. *Salomon,* 148 Mich. 467 ; *Fraam* v. *Railway Co.,* 161 Mich. 556 (29 L. R. A. [N. S.] 834, 21 Ann. Cas. 96) ; *Vigo Agricultural Society* v. *Brumfiel,* 102 Ind. 146 (1 N. E. 382, 52 Am. Rep. 657) ; *Perera* v. *Panama-Pacific International Exposition Co.,* 179 Cal. 63 (175 Pac. 454) ; *Isreal* v. *Uhr,* 164 N. Y. Supp. 50.

Prior to December 9, 1933, when Helm was taken off the city payroll, there was a specific agreement between the city of Flint and plaintiff's lessee whereby he was to manage the airport and render the services above mentioned. In return Helm was paid $50 per month, given the use of the flying field for commercial flying, and the use of defendant's hangar for the storage of plaintiff's airplane. When Helm was transferred from the city payroll to the CWA payroll, the relationship of master and servant between Helm and the city ceased, but it does not follow that the relationship of bailor and bailee ceased to exist. Helm continued to perform the same services for the city of Flint that he had prior thereto. The record shows that he was not notified

to discontinue his services as manager of the airport; that the Federal regulations required that someone be in charge of the field; that on the date of the fire, Helm was the only person in charge of the field; that the city permitted Helm to continue the storage of his airplane at the city airport; and that the city through its city treasurer and superintendent of public works had knowledge of and accepted the services of Helm in the collection of rentals for planes stored at the airport. In our opinion there was evidence from which a jury could find that the relationship between plaintiff's bailee and the city of Flint was for the mutual benefit of both parties.

"It is clear from the decisions that matters of form are usually of slight significance as far as the validity of a contract of bailment is concerned. So long as the lawful possession of property is in the bailee, under circumstances which impose upon him the duty to return or account for it, there appears to be no disposition on the part of the courts to regard it as any the less a bailment because the agreement was informal in character, oral or implied in fact or in law." 6 Am. Jur. p. 206, § 81.

The degree of care required where the bailment is for the benefit of both parties is well stated in *Hofer* v. *Hodge,* 52 Mich. 372 (50 Am. Rep. 256, 1 Am. Neg. Cas. 661), where we said:

"The bailment being beneficial to both parties the duty of the defendant in keeping the property was substantially the same as in a bailment for hire. He was bound to keep and preserve the property with ordinary care—that care which a prudent man ordinarily takes of his own property."

And in *Fraam* v. *Railway Co., supra,* where we said:

"The contract of bailment here under consideration is one for the mutual benefit of the parties, and

the bailee thereunder was bound to exercise ordinary care of the subject-matter of the bailment, and is liable for ordinary negligence. Ordinary care means such care as ordinarily prudent men, as a class, would exercise in caring for their own property under the like circumstances, and whether it is exercised or not is a question of fact for the determination of the jury, under proper instructions.''

The trial court was in error in not submitting to the jury the issue presented by the first count in plaintiff's declaration.

Judgment is reversed and a new trial granted. Plaintiff may recover costs.

WIEST, C. J., and BUTZEL, BUSHNELL, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.