GOLDMAN v PHANTOM FREIGHT, INC

Docket No. 86470. Submitted October 15, 1986, at Detroit. Decided
April 27, 1987. Leave to appeal denied, 429 Mich —.

Elaine Goldman, personal representative of the estate of Bruce
Goldman, deceased, brought an action in the Wayne Circuit
Court against Phantom Freight, Inc., alleging negligence and
breach of warranty. The facts indicate that the decedent was
killed while operating a forklift owned by defendant. The
decedent was employed by Metro Lift Truck, which shared
warehouse space with defendant pursuant to a rental agree-
ment. The respective owners also informally agreed to some
mutual use of each other's equipment and employees as needed.
The accident occurred when the decedent was using defendant's
forklift to move a large piece of cardboard that the defendant's
president had instructed the deceased to remove. Defendant
moved for a directed verdict of no cause of action and the trial
court, Thomas Roumell, J., granted the motion and entered a
judgment thereon. Plaintiff appealed.

The Court of Appeals *held:*

1. Plaintiff's proofs were sufficient to establish a prima facie
case on the question of a relationship which might give rise to
an implied warranty of fitness for a particular purpose.

2. The trial court erroneously usurped the jury's fact-finding
function by determining that plaintiff's proofs failed, as a
matter of law, to establish a bailment. A factfinder could find
that a bailment was created by these facts.

3. If the relationship is found by the factfinder to be one of a
bailment for hire, defendant could be held liable for the alleged
design defect in the forklift. It was a question for the factfinder

REFERENCES

Am Jur 2d, Bailments §§ 66 *et seq.*

Am Jur 2d, Negligence §§ 57-60, 204.

Am Jur 2d, Trial §§ 319 *et seq.*; 463 *et seq.*

Motion by each party for a directed verdict as waiving the submis-
sion of fact questions to jury. 68 ALR2d 300.

Right of motor vehicle owner liable to injured third person because
of negligence of one permitted to drive, to indemnify from the
latter or the latter's employer to whom vehicle was bailed. 43
ALR2d 879.

to determine whether the owner of defendant company had actual knowledge of the alleged defect.

4. The trial court erred in concluding that defendant owed no duty to decedent. The decedent's use of the forklift was not unforeseeable. The potential for decedent's use of the forklift on the specific occasion that he was killed was foreseeable under the circumstances and thus gave rise to a duty as a matter of law.

5. There was ample evidence to defeat the motion for a directed verdict. The trial court erred in granting the motion for a directed verdict. Plaintiff's proofs established a prima facie case of negligence and breach of implied warranty.

Reversed and remanded.

1. TRIAL — DIRECTED VERDICTS — NEGLIGENCE.

Directed verdicts, particularly in negligence cases, are viewed with disfavor; however, a defendant is entitled to a directed verdict where a plaintiff has failed to establish a prima facie case.

2. TRIAL — JURY — FACT QUESTIONS.

A trial court may not take a fact question from the jury when a fact question is presented upon which reasonable persons could reach differing conclusions.

3. APPEAL — TRIAL — DIRECTED VERDICTS.

The Court of Appeals, in deciding whether a trial court erred in entering a directed verdict, reviews all the evidence presented to determine whether a question of fact existed; the Court of Appeals, in doing so, views the evidence in a light most favorable to the nonmoving party, granting him every reasonable inference and resolving any conflict in the evidence in his favor; the trial court's grant of a directed verdict must be reversed if the evidence, viewed in this manner, establishes a prima facie case.

4. BAILMENTS — JURY — FACT QUESTIONS.

"Bailment" imports the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished; the question of whether a bailment was created is a question of fact for the jury to determine.

5. NEGLIGENCE — DUTY — FORESEEABILITY.

"Duty" is a question solely for the court to decide and compre-

hends whether a defendant is under any obligation to the plaintiff to avoid negligent conduct; "duty" is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person and, as such, it depends in part on foreseeability—whether it is foreseeable that the actor's conduct may create a risk of harm to the victim.

*Kelman, Loria, Downing, Schneider & Simpson* (by *Morton E. Schneider* and *Nicholas J. Rine*), for plaintiff.

*Sullivan, Ward, Bone, Tyler, Fiott & Asher* (by *David M. Tyler* and *Michael J. Walter*), for defendant.

Before: Gribbs, P.J., and Hood and R. R. Ferguson,* JJ.

Per Curiam. Plaintiff appeals as of right from a directed verdict of no cause of action which was granted pursuant to defendant's motion at the close of plaintiff's proofs. Plaintiff filed a negligence and breach of warranty claim stemming from the death of Bruce Goldman who was killed while operating a forklift owned by defendant Phantom Freight, Incorporated. The forklift tipped over, crushing the decedent's skull under the forklift's overhead guard. Plaintiff's complaint alleged that defendant was negligent in the following respects:

A. Furnishing a vehicle for use without ascertaining that it was safe to operate for the purposes for which it was intended to be used;

B. By failing to inspect and test the vehicle in question in order to determine that it was safe to operate for the purposes for which it was intended to be used;

---

* Circuit judge, sitting on the Court of Appeals by assignment.

C. Failing to exercise due care in the premises;

D. Failing to exercise due care to warn the users and operators of said vehicle as to the hazards and dangers involved in the use of said vehicle and failing to provide necessary instructions as to its safe use.

Plaintiff also alleged that defendant breached implied and express warranties that the forklift was not defective and was reasonably safe for its intended use in that it lacked necessary safety devices, warnings and instructions.

At the time of the accident, the decedent's employer Metro Lift Truck, which engaged in the repair and maintenance of forklift vehicles, shared warehouse space with defendant pursuant to a rental agreement. The respective owners also informally agreed to some mutual use of each other's equipment and employees as needed. Accordingly, defendant's forklift was often used by Metro's employees to remove trash or perform tasks in the course of Metro's business. The forklift was kept parked in the warehouse with the keys in it.

Although Metro had no formal training program, decedent was learning forklift mechanics by working along with Metro's other employees. In the course of his employment, decedent received some instruction on the operation of forklifts and occasionally used defendant's forklift to remove trash from the building. Although he had no forklift operator's license, decedent was capable, in his employer's opinion, of using a forklift for that purpose. There was no evidence that defendant's president was ever made aware of such use by decedent. However, decisions regarding use of the forklift by Metro's employees were apparently left entirely to the discretion of one of Metro's partners, Dayton Ashby.

On December 4, 1980, decedent was instructed by defendant's president, Frank Hardy, to remove a large piece of paint-saturated cardboard lying on the floor. Although there was some inconsistent testimony concerning the cardboard's size and weight, it weighed at most fifty pounds. In Hardy's opinion, there was no reason that anyone would need a forklift to pick it up. After giving these instructions, Hardy left the area. Decedent, apparently on his own initiative, proceeded to use defendant's forklift to remove the cardboard. Although there were no witnesses to the accident, the vehicle tipped over as decedent was turning a corner outside the warehouse, killing him instantly. Representatives of decedent's employer were not present at the time.

At trial, plaintiff offered proof of the forklift's unfitness through the deposition testimony of an expert, John B. Sevart. In essence, Sevart's testimony was to the effect that the forklift was unfit because it was equipped with an overhead guard without any concomitant restraining devices to prevent persons from being thrown under the guard in the event of a tip-over.

During opening arguments, there were objections by both attorneys to statements made in the course of the arguments. As a result, counsel and the trial judge met in chambers for an off-the-record discussion. Following opening arguments, plaintiff moved for a mistrial, based upon the discussion in chambers. The motion was denied.

At the close of plaintiff's proofs, defendant moved for a directed verdict predicated upon the absence of any legal duty owed to decedent with respect to the design of the forklift and upon plaintiff's failure to establish the existence of a design defect. The trial court granted the motion, essentially basing its opinion upon the absence of

any legal duty on the strength of the proofs submitted. In response, plaintiff's counsel renewed his motion for a mistrial on the basis of bias. Plaintiff's motion was again denied. The propriety of these two rulings by the trial court constitute plaintiff's issues on appeal.

A defendant is entitled to a directed verdict where a plaintiff has failed to establish a prima facie case. However, directed verdicts, particularly in negligence cases, are viewed with disfavor. When a fact question is presented upon which reasonable persons could reach differing conclusions, the trial judge may not take the question from the jury. In deciding whether the trial court erred in entering a directed verdict, we review all the evidence presented to determine whether a question of fact existed. In so doing, we view the evidence in a light most favorable to the nonmoving party, granting him every reasonable inference and resolving any conflict in the evidence in his favor. If the evidence viewed in this manner establishes a prima facie case, we must reverse the trial court's grant of a directed verdict. *Caldwell v Fox,* 394 Mich 401; 231 NW2d 46 (1975). *Cody v Marcel Electric,* 71 Mich App 714, 717; 248 NW2d 663 (1976), lv den 399 Mich 851 (1977).

Factually, the court found that it was unreasonable for defendant to foresee decedent's use of its forklift. The court also found that, at best, the agreement between defendant and Metro was only an implied permission to use defendant's forklift in the course of Metro's business. Under these circumstances, the court, therefore, concluded that, as a matter of law, defendant owed no duty to decedent in tort and that no implied warranty of fitness existed in contract.

The testimony provided no evidence that decedent's use of the forklift was at defendant's direc-

tion. Defendant's president testified that he merely asked decedent to throw out a piece of cardboard. There is no evidence to suggest that defendant was aware that decedent would use the forklift to carry out this instruction or, indeed, aware that decedent had ever used the forklift for any purpose at all.

However, there was testimony of an agreement between defendant and decedent's employer which allowed them to use each other's equipment and employees as needed. Nonetheless, the trial court concluded that "the proofs do not come even close to establishing [a bailment] arrangement." We disagree and find that plaintiff's proofs were sufficient to establish a prima facie case on the question of a relationship which might give rise to an implied warranty of fitness for a particular purpose.

2 Restatement Torts, 2d, § 388, pp 300-301, concerning chattels known to be dangerous for their intended use, provides:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Further, where a bailment for mutual benefit is established, 8 Am Jur 2d, Bailments, § 163, pp 895-896, provides the general rule where a chattel is let for hire:

> While in bailments for gratuitous use the bailor is only liable for injuries due to his failure to disclose latent defects of which he was aware, it is otherwise where there is compensation for the use and the bailment is for the mutual benefit of both parties; in such a case his obligation is correspondingly enlarged. This distinction is fundamental and seems to be generally recognized.
>
> There is no question that if a bailor for hire has actual knowledge of defects in, or dangerous qualities of, the subject of bailment that are not known to the bailee and may result in injury to him, he is bound to disclose such defects or dangerous qualities to the bailee and may be held liable to the latter for damages due to failure to make such disclosure. There is some support for the broad proposition that a bailor for hire has the duty to deliver the thing hired in proper condition to be used as contemplated by the parties, and that for failure to do so he will justly be held liable for damage directly resulting to the bailee from its unsafe condition. It may be stated generally, however, that while a bailor for hire is not an insurer against injuries to his bailee from defects in the article bailed, whether discoverable or not, he is held to a high degree of care to make an examination of the chattel before letting it, and has frequently been regarded under the circumstances shown as impliedly warranting that it is fit for the purpose known to be intended, so that for personal injuries that result on account of a breach of such warranty he may be held liable.

"Bailment," in its ordinary legal signification, imports the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust

shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished. *In re George L Nadell & Co, Inc,* 294 Mich 150, 154; 292 NW 684 (1940); *National Ben Franklin Ins Co v Bakhaus Contractors, Inc,* 124 Mich App 510, 512, n 2; 335 NW2d 70 (1983). Phrased another way, it is a relationship wherein a person gives to another the temporary use and possession of property other than money, the latter agreeing to return the property to the former at a later time. *Godfrey v City of Flint,* 284 Mich 291, 295-296; 279 NW 516 (1938).

In this case, while the facts might, as defendant asserts, point not to the creation of a bailment but merely to a license to use defendant's equipment, the question was one of fact for the jury to determine. We agree with defendant that neither *Jones v Keetch,* 388 Mich 164; 200 NW2d 227 (1972), nor *Hill v Harbor Steel & Supply Corp,* 374 Mich 194; 132 NW2d 54 (1965), cited by plaintiff, are squarely on point in support of plaintiff's position. Still, we believe that the judge erroneously usurped the jury's fact-finding function by determining that plaintiff's proofs failed, as a matter of law, to establish a bailment. A factfinder could find that a bailment was created by these facts.

Additionally, contrary to defendant's argument, if the relationship is found by the factfinder to be one of a bailment for hire, under the Restatement Torts 2d, defendant could be held liable for the alleged design defect in the forklift. Although there was testimony that the propensity of the forklift to tip over at low speeds in a turn was not something that would be recognized by a typical industrial laborer with no special training, and although Frank Hardy specifically testified that he did not consider the subject forklift dangerous, the decedent's father testified that prior to decedent's

death he once saw Hardy almost tip over the same forklift while executing a turn. Thus, it was a question for the factfinder to determine whether Frank Hardy, as owner of defendant company, had actual knowledge of the alleged defect. If the factfinder determined that a bailment existed and that defendant had actual knowledge of the alleged design defect and had no reason to believe that the decedent would realize the propensity of the forklift to tip over while turning and failed to exercise reasonable care to inform the decedent of its dangerous condition, then the factfinder could find that defendant breached an implied warranty of fitness in so bailing the forklift.

Addressing plaintiff's negligence claim, the trial court focused on the element of duty:

Now as to this concept of duty owed to [sic] the Defendant to the deceased, the Court cannot recall any testimony which established any relationship between the Defendant and the deceased. In fact all matters considered there was no testimony that Plaintiff was in any way in such a relationship with the Defendant.

"Duty" is a question solely for the court to decide and comprehends whether a defendant is under any obligation to plaintiff to avoid negligent conduct. *Moning v Alfono,* 400 Mich 425, 436-437; 254 NW2d 759 (1977), reh den 401 Mich 951 (1977). "Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Id.* at 438-439. As such, it depends in part on foreseeability—whether it is foreseeable that the actor's conduct may create a risk of harm to the victim. *Id.* at 439.

A review of the evidence presented convinces us

that the trial court erred in concluding that defendant owed no duty to decedent. While it is true that defendant had no direct involvement in decedent's use of the forklift, such use was not unforeseeable. Defendant's president testified that his understanding of his agreement with Metro was that Metro's employees could use the forklift at the discretion of Metro's owners. Dayton Ashby, one of the owners, testified that decedent, in the course of his employment, had occasion to use defendant's forklift to carry out trash. In Ashby's opinion, decedent was qualified to use the forklift for that purpose. The evidence indicates that defendant's president may have been unaware of decedent's prior use or of Dayton Ashby's assessment of decedent's ability to use a forklift. However, given his professed understanding of the agreement, the *potential* for such use on this specific occasion was foreseeable under the circumstances and thus gave rise to a duty as a matter of law.

Defendant argues that, even if a duty existed, the court's grant of a directed verdict was proper because plaintiff presented no data or other factual evidence concerning the magnitude of the risks involved, the utility or relative safety of plaintiff's expert's proposed alternatives, or evidence otherwise concerning the unreasonableness of risks arising from defendant's conduct. In this regard, defendant points to *Owens v Allis-Chalmers Corp,* 414 Mich 413; 326 NW2d 372 (1982), where our Supreme Court addressed the liability of a manufacturer in a forklift tip-over case that was very similar to the instant case. We think that *Owens* is distinguishable from the instant case.

The "expert" in *Owens* was an independent consulting physicist who had worked for General

Motors for twelve years in the area of vehicle safety. Summarizing his qualifications, the Supreme Court said:

> He had never designed a forklift, nor any part of one, and had not worked in conjunction with their manufacture. He had operated one during a summer about 30 years prior to trial, but not since. Apart from preparing for this litigation, the record is not clear concerning whether any of his work in the area of vehicle safety had related specifically to forklifts. He testified, however, that a forklift was just another type of vehicle to which much of his work on vehicles in general would be applicable. [414 Mich 418.]

In this case, by contrast, John Sevart, plaintiff's expert, a licensed professional engineer, had been involved with forklifts as a member of an industry standards committee. He testified that he had extensive experience in accident investigation involving forklifts and had investigated approximately ninety forklift accidents. He was active in development of operator protection devices or restraints that would protect operators in the event of upsets. Sevart testified that the forklift involved in the decedent's death was defective and unreasonably dangerous for its foreseeable uses, as it had an overhead guard which created a very serious risk of injury and death to operators in foreseeable tip-over situations, since the vehicle was not equipped with restraints for the operator. He testified to various types of restraints such as seatbelts or captain's chair-type seats that could be used to prevent serious injury but which were not used on the vehicle in question.

This testimony coupled with the testimony of decedent's employer, Dayton Ashby, whose business was repairing forklifts and who stated that,

subsequent to the accident, he repaired forklifts that were equipped with seatbelts, and the testimony of decedent's father, suggesting that Frank Hardy was aware of the tip-over potential of the forklift, combined to set forth ample evidence to defeat the motion for a directed verdict. Plaintiff's expert's testimony exhibits none of the deficiencies that the expert testimony in *Owens* did. Defendant's argument to the contrary is without merit.

Accordingly, we conclude that the trial court erred in granting defendant's motion for a directed verdict. Plaintiff's proofs established a prima facie case of negligence and breach of implied warranty. Because the trial judge has retired and is no longer on the bench, the new trial in this case will be before a different judge and we need not address plaintiff's arguments on the bias and mistrial issue.

Reversed and remanded for a new trial.