201 Mich. App. 260 (1993)
506 N.W.2d 275
TEODORESCU
v.
BUSHNELL, GAGE, REIZEN & BYINGTON
Docket No. 133474.
Michigan Court of Appeals.
Submitted February 2, 1993, at Detroit.
Decided August 17, 1993, at 9:05 A.M.
Samuel H. Gun, for the plaintiff.
Plunkett & Cooney (by Christine D. Oldani and Frank W. Brochert), for the defendant.
Before: WAHLS, P.J., and MICHAEL J. KELLY and CONNOR, JJ.

ON REMAND
PER CURIAM.
This is a legal malpractice claim that arose out of defendant's representation of plaintiff in a divorce action. A 37th District Court jury found in favor of plaintiff and awarded her damages of $128,000. Defendant appealed to the Macomb Circuit Court, which affirmed the judgment's award of $100,000 for plaintiff's loss of the marital home, but reversed the award of $28,000 for legal fees. This Court denied defendant's application for leave to appeal, but the case was subsequently remanded to this Court for consideration as on leave granted. 436 Mich 871 (1990). On appeal, defendant claims that the trial court erred in denying its motion for a directed verdict, raising numerous arguments. We disagree and affirm.
According to the testimony presented by plaintiff, she retained defendant in October 1976. She was told that her trial, if one occurred, would be handled by Mr. Gage or Mr. Reizen, attorneys with defendant. Mr. Henry, another attorney with defendant, was responsible for reviewing the business records of plaintiff's husband. Henry told plaintiff that her husband, a medical doctor, had substantial assets. The husband had been ordered *263 to continue paying the mortgage on the marital home during the proceedings. Just before trial commenced in November 1977, plaintiff received notice that her husband had stopped making mortgage payments. Plaintiff informed another of defendant's attorneys, Chrys Kotsis, of this, and was told, "We'll handle it."
Gage, Reizen, and Henry were not present at trial. Instead, the trial was handled by Kotsis and David Kohl. Kotsis did not recall whether any of the husband's business records were offered as evidence at trial, while Kohl admitted that he did not review the records. No expert testimony was presented regarding the value of the husband's practice. At the conclusion of the trial on December 2, 1977, the trial judge indicated from the bench that plaintiff would be awarded the house, free and clear of the mortgage, alimony, and other things. The house was the most valuable asset awarded.
Plaintiff received a notice of foreclosure on December 28, 1977. Kotsis knew the following day that proceedings for foreclosure and a sheriff's sale had begun. Defendant took no action concerning the foreclosure. Plaintiff consulted with other attorneys, but did not hire them. After plaintiff met with defendant's attorneys on January 19, 1978, defendant decided to withdraw as plaintiff's counsel and filed its motion on January 31. The parties to the divorce appeared in court on February 6. Plaintiff had other counsel present at the hearing, but he did not file an appearance. The trial court informed those present that it would not allow counsel for either side to substitute or withdraw until after the judgment was entered, which occurred the same day.
Eleven days after the judgment was entered, foreclosure occurred. Despite her efforts to retain *264 the house, plaintiff was evicted the following year. Plaintiff filed the present action on February 6, 1980, alleging attorney malpractice in that defendant had inadequately represented her in the divorce and had failed to protect from foreclosure the marital home that had been awarded to her.
Directed verdicts are disfavored in most negligence cases. Vsetula v Whitmeyer, 187 Mich App 675, 679; 468 NW2d 53 (1991). In reviewing the denial of a motion for a directed verdict, we will examine the evidence presented up to the time of the motion in a light most favorable to the plaintiff. The plaintiff is given the benefit of every reasonable inference that may be drawn from the evidence. If reasonable minds could differ with regard to whether the plaintiff has met the burden of proof, a motion for a directed verdict should not be granted. Howard v Canteen Corp, 192 Mich App 427, 431; 481 NW2d 718 (1992); Goldman v Phantom Freight, Inc, 162 Mich App 472, 477; 413 NW2d 433 (1987). A defendant is entitled to a directed verdict where a plaintiff has failed to establish a prima facie case. Stoken v J E T Electronics & Technology, Inc, 174 Mich App 457, 463; 436 NW2d 389 (1988). In an action for legal malpractice, a plaintiff must establish (1) the existence of an attorney-client relationship, (2) the acts that are alleged to constitute negligence, (3) that the negligence was a proximate cause of the injury, and (4) the fact and extent of the injury alleged. Coleman v Gurwin, 195 Mich App 8, 10-11; 489 NW2d 118 (1992); Lowman v Karp, 190 Mich App 448, 451; 476 NW2d 428 (1991).
Defendant first claims plaintiff failed to show any acts of negligence. In particular, defendant argues that it cannot be held liable for plaintiff's loss of the house because the attorney-client relationship *265 had ended before the sheriff's sale.[1] We disagree. First, the testimony of defendant's expert witness that defendant refers to on appeal is irrelevant to our review of the denial of a motion for a directed verdict. Evidence of numerous acts of negligence were presented in plaintiff's case in chief, including defendant's failure to take any steps to prevent foreclosure and its allowing the house to be included in the judgment, without objection, despite the pending foreclosure. The trial court in the divorce action awarded plaintiff the house free and clear, and, had the court been made aware of the status of the house, it would probably have awarded plaintiff unencumbered assets to achieve an equitable division of property. The ultimate loss of the house was merely the manifestation of the injury caused by defendant's negligence.[2] We also find defendant's reliance on Boyle v Odette, 168 Mich App 737; 425 NW2d 472 (1988), to be misplaced.[3]Boyle does not hold that an attorney may cut off his liability for negligent acts by ending the attorney-client relationship *266 before the harm caused by the acts reaches its full extent.
Defendant next claims that plaintiff failed to show that defendant's negligence was a proximate cause of her damages. Proximate cause is a question of fact that is generally to be decided by a jury. Fiser v Ann Arbor, 417 Mich 461, 474-475; 339 NW2d 413 (1983). Defendant does not specifically discuss the substance of plaintiff's proofs in connection with this argument, but rather casts the issue of proximate cause as one of law. That is, defendant argues that irrespective of whether plaintiff's proofs showed causation in fact, defendant should not be held legally responsible. Again, the testimony of defendant's experts regarding proximate cause, noted in defendant's appellate brief, is irrelevant to whether plaintiff established a prima facie case.
With regard to the legal component of proximate cause, legal cause is often stated in terms of foreseeability. Richards v Pierce, 162 Mich App 308, 317; 412 NW2d 725 (1987). We hold that it is readily foreseeable that defendant's failure to take steps to prevent foreclosure or to seek the inclusion of other unencumbered assets in the judgment would cause plaintiff financial harm. Defendant also argues that plaintiff's failure to avail herself of the judgment's "fraud provision" should bar this action. The fraud provision was concerned only with concealed assets. The marital home was not a concealed asset, nor is there any indication that the business assets of plaintiff's husband were concealed. Rather, defendant failed to attempt to discover them or present evidence of their value at trial. Furthermore, we do not consider resort to the fraud provision to be an element of a prima facie case of legal malpractice. If defendant's argument is understood to be that plaintiff failed to *267 mitigate her damages, then it was defendant's burden to prove so, not plaintiff's. Brooks v Rose, 191 Mich App 565, 571-572; 478 NW2d 731 (1991); Dep't of Civil Rights v Horizon Tube Fabricating, Inc, 148 Mich App 633, 637; 385 NW2d 685 (1986). The same is true with regard to the 1983 money judgment that the plaintiff obtained against her former husband, which will be discussed infra, and the apparent failure of plaintiff's subsequent counsel to seek a contempt order against her husband. Nor is the "suit within a suit" doctrine applicable to this case. See Coleman, supra, p 12, for a brief discussion of the limited scope of the doctrine.
Defendant also claims that plaintiff "failed in her proximate causation burden because she omitted to prove the collectibility of any so-called judgment she would have received but for Defendant Law Firm's negligence." While acknowledging that no Michigan authority holds that a "collectibility" element must be shown in order to establish a prima facie case of legal malpractice, defendant does draw our attention to authorities from other jurisdictions that impose this requirement. The gist of the argument is that if plaintiff's husband could not have satisfied a greater judgment, then plaintiff is left in the same position she would have been in had there been no attorney malpractice. Although this argument is made in connection with the proximate cause issue, it is more accurately an argument relating to the damages element of the claim.
Several jurisdictions impose a collectibility requirement on legal malpractice claims, at least where an attorney is engaged to prosecute an action and does so negligently. See anno: Measure and elements of damages recoverable for attorney's negligence in preparing or conducting litigation  Twentieth Century cases, 90 ALR4th 1033, *268 § 17, pp 1071-1076. In the majority of those jurisdictions, the burden of showing collectibility is on the plaintiff. We decline to follow these authorities. Rather, we choose to follow the minority view and hold that collectibility is an affirmative defense to an action for legal malpractice that must be pleaded and proved by the defendant. The burden of showing complete or partial uncollectibility is on the defendant.[4]Jourdain v Dineen, 527 A2d 1304 (Me, 1987). Because we are at present concerned only with whether plaintiff established a prima facie case of legal malpractice, this holding does not require that the judgment be reversed.
In 1983, plaintiff obtained a money judgment against her former husband in the Macomb Circuit Court, Judge Kenneth Sanborn presiding. Among other things, the judgment awarded plaintiff a sum certain for the loss of the marital home. There is no indication in the record that the judgment was ever satisfied, nor is there any argument that it was. Defendant now argues that reversal is required because "being in possession of such a Judgment, it must be said that Plaintiff suffered no damages for loss of the marital home and that the Jury Verdict of $100,000.00 for the marital home amounted to double compensation to which Plaintiff is not entitled." This argument merits little discussion. Being in possession of an unsatisfied judgment is a far different matter than being in possession of an unencumbered house.[5] Moreover, at common law a plaintiff is permitted to pursue and recover separate judgments from *269 multiple tortfeasors, but may only recover one compensation or satisfaction for a single injury. Kaminski v Newton, 176 Mich App 326, 328; 438 NW2d 915 (1989).[6] Defendant's argument would have merit had the judgment been satisfied, and whether defendant now possesses any claim to that judgment is a question that is not before us.
Affirmed.
MICHAEL J. KELLY, J. (concurring).
While I concur in the result, I write separately to emphasize that plaintiff was not required to establish that her husband was "collectible." This was not an element of plaintiff's prima facie case. The fact that a judgment may not be collectible at the time of its entry does not mean that it will not become collectible at some time during the ten-year enforcement or renewal period. MCL 600.5809(3); MSA 27A.5809(3).
Just as defendant had the burden to show uncollectibility, it also had the burden of proving that the Sanborn judgment had been paid, because satisfaction is also an affirmative defense. MCR 2.111(F)(3)(a).
NOTES
[1] While the point is not important to the resolution of this argument, we note that defendant's claim that the relationship ended on January 19, 1978, the date upon which defendant decided to cease representing plaintiff, is without merit. The relationship ended on February 6, 1978, the day the trial court granted defendant's motion to withdraw. Until that time, defendant was obligated to exert its best efforts to wholeheartedly advance plaintiff's legitimate interest with fidelity and diligence. State Bar of Michigan v Daggs, 384 Mich 729, 732; 187 NW2d 227 (1971).
[2] On appeal, plaintiff rather colorfully summarizes defendant's position: "Having admitted to severing Plaintiff's arm, Defendant seems to suggest that it is not liable for any damages resulting therefrom simply because it managed to leave the scene before the exact instant when the victim actually bled to death."
[3] Defendant points to the following passage in Boyle, supra, p 745:

We agree with defendant Odette that he cannot be held liable for failing to file a social-host action prior to expiration of the period of limitation where he ceased to represent plaintiff and was replaced by other counsel before the statutory period ran on her underlying action.
[4] If, for example, a defendant could show that a judgment would have been only partially collectible, then a plaintiff's damages would be limited to the amount collectible.
[5] For example, an unsatisfied judgment does not keep the rain off one's head.
[6] Bourke v Warren, 118 Mich App 694; 325 NW2d 541 (1982), a case relied upon by defendant, is consistent with this rule. Unlike the present case, the plaintiffs in Bourke "recovered" a judgment, which implies satisfaction.