*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NICK YONO,

        Plaintiff-Appellant,

v

COUNTY OF INGHAM, INGHAM COUNTY
TREASURER, and INGHAM COUNTY LAND
BANK FAST TRACK AUTHORITY,

        Defendants-Appellees.

UNPUBLISHED
December 28, 2023

No. 362536
Ingham Circuit Court
LC No. 20-000697-CZ

Before: GLEICHER, C.J., and JANSEN and RICK, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court order granting summary disposition in favor of defendants, the County of Ingham, Ingham County Treasurer, and the Ingham County Land Bank Fast Track Authority. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

Plaintiff was the sole owner of a commercial industrial property located at 1506 N. Grand River Avenue in Lansing, Michigan. He purchased the property in 2006 by land contract, which was recorded with the register of deeds. In 2016, a certificate of forfeiture of real property was recorded with the register of deeds, indicating that plaintiff failed to pay $1,891 in property taxes in 2014. In 2017, a certificate of forfeiture of real property was recorded for nonpayment of property taxes in 2015 for $15,684.41. The property was worth $378,400. Under the Michigan General Property Tax Act (GPTA), MCL 211.1 *et seq.*, the county and the treasurer foreclosed the property and held an auction for sale, but the property was not purchased. Thus, the county executed a quit claim deed transferring the property to the Land Bank for $1. The Land Bank may have since sold the property for redevelopment.

-1-

Plaintiff filed suit, alleging that defendants unconstitutionally took his property without just compensation in violation of Const 1963, art 10, § 2, and that he had a vested property interest equal to the fair market value minus the amount of property taxes overdue and costs attributable to the tax foreclosure. Plaintiff also alleged a bailment claim because he believed that defendants were in possession of certain items of his personal property that remained on the land after the foreclosure.

Defendants denied the allegations of liability and moved for summary disposition. Defendants argued that they were entitled to summary disposition of plaintiff's takings claim under *Rafaeli, LLC v Oakland Co*, 505 Mich 429; 952 NW2d 434 (2020), in which the Michigan Supreme Court held that a foreclosed taxpayer is entitled to compensation for the amount of any surplus proceeds actually realized through a tax foreclosure sale. Defendants explained that the transfer of the property from the county to the Land Bank did not yield any surplus proceeds, and argued that under *Rafaeli*, plaintiff had no right to recovery. Defendants claimed entitlement to governmental immunity as a defense to plaintiff's bailment claim, arguing that the bailment issue sounded in tort. They further argued that even if they could be found liable under a bailment theory, they never had possession of plaintiff's personal property. Plaintiff responded that the facts of this case did not fit under *Rafaeli* because there was no sale and therefore no surplus proceeds. He contended that nevertheless, his equity in the property was taken without just compensation. Plaintiff also asserted that defendants were not entitled to governmental immunity because they were not performing a governmental function when they seized his property without just compensation. The trial court granted defendants' motion for summary disposition. This appeal followed.

## II. ANALYSIS

## A. TAKINGS CLAUSE

Plaintiff first argues that summary disposition was improper because an unconstitutional taking of his property occurred when defendants transferred the property to the Land Bank for far less than what was owed in delinquent taxes. Plaintiff claims this was a violation of the Takings Clause of the Michigan Constitution, Const 1963, art 10, § 2, because he received no just compensation. We agree.

"This Court reviews de novo the grant or denial of a motion for summary disposition to determine if the moving party is entitled to judgment as a matter of law." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020) (quotation marks and citation omitted). Although defendants moved for summary disposition under several subsections of MCR 2.116(C), the trial court specifically granted summary disposition of plaintiff's takings claim under MCR 2.116(C)(10). Summary disposition is appropriate under MCR 2.116(C)(10) "when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Id*. (quotation marks and citation omitted). The interpretation of statutes, court rules, and legal doctrines is also reviewed de novo. *Id*.

The GPTA, MCL 211.1 *et seq.*, provides for the recovery of unpaid real property taxes, penalties, interest, and fees through the foreclosure and sale of the property for which there is a tax delinquency. After being given notice of a delinquency, if a property owner fails to timely redeem the property, fee simple title is vested in the county treasurer. MCL 211.78 *et seq*. After the foreclosure, the state or municipality may claim the property. MCL 211.78m(1). If the state or municipality fails to exercise their right of first refusal, the property is put up for sale at public auction. MCL 211.78m(1) and (2). However, if the property is not sold at auction and the foreclosing unit (other than the state) retains possession, the foreclosing unit may "[t]ransfer the property to a land bank fast track authority created under the land bank fast track act," MCL 124.751 *et seq*. MCL 211.78m(7)(a).

There is no dispute that plaintiff was delinquent in paying taxes on the property in 2014 and 2015. The record does not indicate that he ever tried to redeem the property. Thus, the certificates of forfeiture of real property were recorded with the register of deeds, and title was vested in the treasurer. MCL 211.78 *et seq*. The property was not sold at public auction, so the county deeded the property to the Land Bank for $1, per the procedure described under MCL 211.78m(7)(a). Plaintiff alleges that defendants' actions violated the Takings Clause of the Michigan Constitution, which provides:

> Private property shall not be taken for public use without just compensation therefore being first made or secured in a manner prescribed by law. If private property consisting of an individual's principal residence is taken for public use, the amount of compensation made and determined for that taking shall not be less than 125% of that property's fair market value, in addition to any other reimbursement allowed by law. . . .

> "Public use" does not include the taking of private property for transfer to a private entity for the purpose of economic development or enhancement of tax revenues. Private property otherwise may be taken for reasons of public use as that term is understood on the effective date of the amendment to this constitution that added this paragraph. [Const 1963, art 10, § 2.][1]

"The government's seizure of real property is the clearest form of a taking requiring just compensation." *Rafaeli*, 505 Mich at 455. Although general concepts involving the Takings Clause apply to this issue, *Rafaeli* is ultimately controlling here.[2] See *Jackson v Southfield Neighborhood Revitalization Initiative*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket No. 361397); slip op at 22 (finding that *Rafaeli* did not preclude an unjust-takings claim where the subject property was foreclosed on and then transferred to a land bank following an unsuccessful foreclosure sale). Plaintiff argues that *Rafaeli* does not go far enough, because unlike the property

---

[1] Plaintiff brings his takings claim only under the Michigan Constitution. He makes no claims addressing the Takings Clause of the United States Constitution.

[2] *Rafaeli* applies retroactively "to pending cases . . . in which a challenge has been raised and preserved." *Proctor v Saginaw Co Bd of Comm*, 340 Mich App 1, 23; 985 NW2d 193 (2022).

at issue in *Rafaeli*, his property was not successfully sold at auction and there were no surplus proceeds for defendants to retain. We agree that the *Rafaeli* Court was not dealing with a situation where property failed to sell at auction and was instead given over to a land bank. Even so, *Rafaeli* informs much of our thinking about foreclosure cases, even if the facts of that case are not identical to those we are dealing with in the instant matter.

In *Rafaeli*, 505 Mich at 437, the two plaintiffs owed unpaid property taxes to Oakland County. The county and its treasurer foreclosed the properties for the delinquencies, sold the properties for an amount much greater than the taxes owed, and retained the proceeds. *Id*. The issue before our Supreme Court was whether the defendants committed an unconstitutional taking by retaining surplus proceeds from the sale of the properties that exceeded the amount the plaintiffs owed in unpaid delinquent taxes, interest, penalties, and fees under the GPTA. *Id*. The GPTA did not provide any recourse for the plaintiffs, as it contains no procedures allowing property owners to recover the surplus proceeds generated by a foreclosure sale. *Id*. at 449. Consequently, the *Rafaeli* Court decided the issue under the Takings Clause of the Michigan Constitution, and held that the defendants' "retention of those surplus proceeds [was] an unconstitutional taking without just compensation under" Const 1963, art 10, § 2. *Id*.

Defendants argue that there can be no unlawful taking here because no surplus proceeds were generated from the foreclosure of plaintiff's property. They note that under *Rafaeli*, "a former property owner only has a right to collect the surplus proceeds from the tax-foreclosure sale; that is, a former property owner has a compensable takings claim if and only if the tax-foreclosure sale produces a surplus." 505 Mich at 477. As such, defendants argue, there could not have been an unlawful taking here. However, defendants ignore the key fact that, unlike in *Rafaeli*, where a tax foreclosure sale occurred, no such sale occurred in this case. Thus, on that point, *Rafaeli* is distinguishable from the instant matter. *Jackson*, ___ Mich App at ___; slip op at 20. Even so, this Court recently opined that *Rafaeli* did not preclude an unjust-takings claim under the Michigan Takings Clause, where the plaintiffs' properties were foreclosed upon and transferred over to a land bank after being purchased by the city of Southfield from the Oakland County Treasurer for the minimum bid, meaning that no surplus equity was generated from the sale. *Id*.; slip op at 4-5; 22.

Although the Court in *Rafaeli* did state that "a former property owner has a compensable takings claim if and only if the tax-foreclosure sale produces a surplus[,]" *id*. at 477, the Sixth Circuit in *Hall v Meisner*, 51 F 4th 185, 189-190 (6th Cir 2022), was "dictum." The *Jackson* Court agreed, stating:

> In *Rafaeli*, our Supreme Court had no reason to consider what result would be required when the government merely retained title to the subject property and transferred it to another governmental entity for the cost of the tax debt and associated fees and costs. The right to the retention of surplus proceeds necessarily relies on an arms-length public auction, which allows for a real-time evaluation of the value of the subject property. When no such auction occurs, such as was the case here, the lack of surplus proceeds can hardly be described as not a taking— plaintiffs still lost their equitable title in their properties. The crux of *Rafaeli* was that the government cannot receive more than it was owed (including costs and

-4-

fees, of course). In cases where there was a public tax-foreclosure sale, the amount the [foreclosing governmental unit (FGU)] received was the monetary value for which the property was sold. When there is no public sale, what did the FGU receive? A piece of real property with a certain value. Despite the lack of an exchange of currency, the government still received more than it was owed. Consequently, like the Sixth Circuit, we conclude the specific language in *Rafaeli* about former property owners having only an interest in the surplus from a public tax-foreclosure sale was obiter dicta. [*Jackson*, ___ Mich App at ___; slip op at 21.]

We agree with this analysis completely. As this Court aptly pointed out in *Jackson*, the *Rafaeli* Court was not dealing with a scenario like that which has been presented here, and thus had no cause to consider what might happen if property was not sold in a foreclosure sale and was instead given to a land bank. Even though no sale occurred, the fact that there were no surplus proceeds does not at all imply that there was no taking, or that the property lacked any inherent value. Plaintiff here still lost his equitable interest in the property, which certainly had some value, as every parcel of property does, one way or another. This is clearly the sort of taking that the Michigan Takings Clause is designed to prevent, and even though there was no real sale or purchase of the property as a result of the foreclosure, defendants necessarily got more than what they were owed by virtue of retaining the property without paying anything to plaintiff. Thus, we agree with the *Jackson* and *Hall* Courts that *Rafaeli*'s pronouncement that former property owners only have a compensable claim if a surplus exists was obiter dicta, and is not binding on this Court. See *Estate of Pearce v Eaton County Rd Comm*, 507 Mich 183, 197; 968 NW2d 323 (2021) ("Unlike holdings, [o]biter dicta are not binding precedent. Instead, they are statements that are unnecessary to determine the case at hand and, thus, lack the force of an adjudication." (quotation marks and citation omitted; alteration in original)).

This conclusion also tracks with the Sixth Circuit's overall holding in *Hall*. In that case, the defendants foreclosed on the plaintiffs' properties and ultimately turned them over to a land bank. *Hall*, 51 F 4th at 188-189. The Sixth Circuit concluded that the GPTA violated the Takings Clause of the United States Constitution to the extent that it allowed the defendants to take absolute title to the plaintiffs' properties without just compensation. *Id*. at 194. Considering the ruling in *Hall*, which concerned the federal Takings Clause, it would certainly be bizarre for this Court to reach a different result under the Michigan Takings Clause, which the *Rafaeli* Court specifically noted "has been interpreted to afford property owners greater protection than its federal counterpart when it comes to the state's ability to take private property for a public use under the power of eminent domain." *Rafaeli*, 505 Mich at 454, citing *Wayne Co v Hathcock*, 471 Mich 445; 684 NW2d 765 (2004); see also *Jackson*, ___ Mich App at ___; slip op at 21-22.

Additionally, the United States Supreme Court essentially adopted the reasoning set forth in *Hall* when it issued *Tyler v Hennepin Co, Minn*, 598 US 631, 638; 143 S Ct 1369; 215 L Ed 2d 564 (2023). There, the Supreme Court stated that unjust taking occurs in the federal context if the government takes a person's property and keeps it instead of holding a foreclosure sale. *Id*. at 643. The Court discussed *United States v Lawton*, 110 US 146; 3 S Ct 545; 28 L Ed 100 (1884), an earlier decision in which it "extended a taxpayer's right to surplus" by holding "that the taxpayer

was still entitled to the surplus under the statute, just as if the Government had sold the property." *Tyler*, 598 US at 643, citing *Lawton*, 110 US at 149-150. Thus, the Supreme Court held that a property owner is entitled to compensation based on his or her equitable interest in a foreclosed property, even if no sale of the property occurred. *Id*.

We recognize that *Hall* is not binding on this Court, but agree with the *Jackson* Court that its reasoning is persuasive. *Jackson*, ___ Mich App at ___; slip op at 18. And even if that were not the case, *Tyler* is certainly binding on this Court, and necessarily informs our determination of how best to apply the more broadly protective Michigan Takings Clause. See *id*. We also find *Lawton* and *Tyler* instructive in determining the appropriate remedy here. In *Lawton*, the surplus amount was calculated based on the value of the property, since there was no sale price to consider. *Tyler*, 598 US at 643, citing *Lawton*, 110 US at 148-150. Notably, our Supreme Court extensively cited *Lawton* in *Rafaeli*, albeit in the context of a case involving a tax foreclosure sale. *Rafaeli*, 505 Mich at 458-459. Thus, the *Rafaeli* Court essentially acknowledged the applicability of the *Lawton* line of cases, which includes *Tyler*. Accordingly, for all of the foregoing reasons, we conclude that *Rafaeli* applies and that plaintiff has successfully proven that defendants violated the Michigan Takings Clause in this matter. We therefore reverse the order granting summary disposition to defendants. As was the case in *Lawton*, we direct the trial court to calculate the "surplus" owed on the property by reference to the value of the property, less what plaintiff owed on it when the foreclosure occurred. *Jackson*, ___ Mich App at ___; slip op at 22.

## B. BAILMENT

Plaintiff argues the trial court erred in granting summary disposition to defendants with regard to his bailment claim because defendants were not entitled to governmental immunity and a genuine issue of material fact existed whether defendants were in possession of his personal property. We disagree.

The trial court granted defendants' summary disposition of plaintiff's bailment claim under MCR 2.116(C)(7) as well as (C)(10). Summary disposition is appropriate under MCR 2.116(C)(7) if the defendant is entitled to "immunity granted by law." "A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence. If such material is submitted, it must be considered." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Summary disposition is appropriate under MCR 2.116(C)(10) "when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Glasker-Davis*, 333 Mich App at 229 (quotation marks and citation omitted).

Bailments are a form of express or implied contract. *Nat'l Ben Franklin Ins Co v Bakhaus Contractors, Inc*, 124 Mich App 510, 512 n 2; 335 NW2d 70 (1983), citing 8 Am Jur 2d, Bailments, § 2, p 738, and *In re George L Nadell & Co, Inc*, 294 Mich 150, 154; 292 NW 684 (1940). " 'Bailment,' in its ordinary legal signification, imports the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished." *Goldman v Phantom Freight, Inc*, 162 Mich App 472, 479-480; 413

-6-

NW2d 433 (1987). "[I]t is a relationship wherein a person gives to another the temporary use and possession of property other than money, the latter agreeing to return the property to the former at a later time." *Id*. at 480. Michigan law classifies bailments as either gratuitous (for the sole benefit of either the bailor or bailee) or mutual (for the benefit of both parties). *Godfrey v City of Flint*, 284 Mich 291, 295; 279 NW 516 (1938). If a bailment relationship exists, standards of care are automatically imputed on both the bailor and bailee. *Id*. at 297.

"One of the essential elements of a bailment is that the property be taken into the possession of the bailee, and the bailee must, at a minimum, knowingly take the property into possession or control for there to be a bailment." 8 Am Jur 2d, Bailments, § 4. Plaintiff's bailment claim merely alleged the following:

> 33. It is believed that Defendants are in possession of the Plaintiff's personal property ("Personal Property") that which remains on the Property after the foreclosure.
>
> 34. This has created a constructive (or implied) Bailment relationship between Defendant's [sic] (bailee) and Plaintiff (bailor).
>
> 35. As a result, Defendant's [sic] or bailees[] have an obligation to protect and account for Plaintiff's Personal Property.
>
> 36. If Defendants fail to protect or account for Plaintiff's Personal Property, Plaintiff seeks compensatory and punitive damages.

Thus, there was no evidence in the record that the Land Bank was in possession of plaintiff's personal property. Eric Schertzing, a member of the Board of Directors of the Land Bank, attested in an affidavit that there was no personal property on the premises when it was transferred to the Land Bank in 2018. He further attested that the Land Bank has kept the premises secure from intrusion in anticipation of a future sale. In response, plaintiff submitted his own affidavit in an attempt to contest the facts stated by Schertzing. Plaintiff attested that the property was not vacant until he was evicted, and at that time he had "personal property in the building with a value of $60,000, consisting of equipment (labeling machine, hi lo [sic]), product inventory, miscellaneous equipment, racking systems and shelving." However, plaintiff's affidavit fails to establish that these items of personal property were actually on the land or that defendants were in possession of said property. Plaintiff presented no further documentary evidence to establish that defendants had possession of any of his personal property, or to show that a bailment existed between the parties. Therefore, plaintiff has not presented a genuine issue of material fact as to whether defendants possessed his personal property, and his bailment claim fails as a matter of law. Summary disposition was proper under MCR 2.116(C)(10).[3]

---

[3] Having decided that summary disposition was proper under MCR 2.116(C)(10), this Court need not decide if summary disposition was also proper under MCR 2.116(C)(7).

## III. CONCLUSION

The trial court erred by granting defendants' motion for summary disposition as to plaintiff's Takings Clause claim, but did not err by granting summary disposition as to defendant's bailment claim. We therefore affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

/s/ Elizabeth L. Gleicher
/s/ /Michelle M. Rick