UNIVERSAL UNDERWRITERS INSURANCE COMPANY v
VALLEJO

Docket No. 109076. Submitted June 21, 1989, at Lansing. Decided
August 21, 1989. Leave to appeal applied for.

Jesus Ernesto Vallejo obtained permission from Martin Chevrolet
Sales, Inc., to test drive one of its automobiles. The automobile
sustained total damage in an accident during Vallejo's test
drive. Martin's insurer, Universal Underwriters Insurance
Company, paid a claim filed by Martin for the wrecked automo-
bile. Universal, individually and as subrogee of Martin, brought
an action against Vallejo in Saginaw Circuit Court. Plaintiff
alleged in part that a bailment was created when Martin
entrusted its automobile to defendant and that defendant
breached the contract of bailment by failing to return the
automobile to Martin in the same condition as when entrusted
to him. Defendant brought a motion for summary disposition,
claiming both that plaintiff had failed to state a claim upon
which relief could be granted and that there were no genuine
issues of material fact and he was entitled to a judgment as a
matter of law. The court, Joseph R. McDonald, J., granted the
motion, stating that it was granting the motion "for the rea-
sons requested by the defense attorney." Plaintiff appealed.

The Court of Appeals *held:*

1. The no-fault automobile insurance act in large measure
abolished tort liability for injuries or damages arising from the
ownership, maintenance, or use in Michigan of a motor vehicle.
However, the act did not abolish contractual liability for losses
arising from the use of a motor vehicle.

2. A contract of bailment is created when the owner of an
automobile gives possession of it, with permission to operate it,
to another person.

3. Plaintiff sufficiently stated a cause of action for breach of a
bailment contract. The trial court therefore erred in granting

REFERENCES

Am Jur 2d, Automoblie Insurance §§ 340 *et seq.*; Bailments § 2.
See the Index to Annotations under Automobiles and Highway
Traffic; Bailment; No-Fault Insurance.

summary disposition on the ground that plaintiff had failed to state a claim upon which relief could be granted.

4. The trial court also erred in granting summary disposition on the ground that there existed no genuine issues of material fact. Defendant had abandoned this ground in the proceedings below by asserting at the hearing on his motion that the motion was based on plaintiff's failure to state a claim. Additionally, defendant did not, as required by court rule, file affidavits, depositions, admissions, or other documentary evidence in support of his assertion that there were no genuine issues of material fact and that he was entitled to judgment as a matter of law.

Reversed and remanded for further proceedings.

1. INSURANCE — NO-FAULT — CONTRACTUAL LIABILITY.

The no-fault automobile insurance act did not abolish contractual liability for losses arising from the use of a motor vehicle (MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*).

2. WORDS AND PHRASES — BAILMENTS.

"Bailment," in its ordinary legal signification, imports the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished; phrased another way, it is a relationship wherein a person gives to another the temporary use and possession of property other than money, the latter agreeing to return the property to the former at a later time.

3. BAILMENTS — AUTOMOBILES — NO-FAULT AUTOMOBILE INSURANCE ACT.

A contract of bailment is created when the owner of an automobile gives possession of it, with permission to operate it, to another person; liability for a breach of such contract by the bailee, e.g., failing to return the automobile in the same condition as when entrusted, is not precluded by the no-fault automobile insurance act (MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*).

*Davidson, Breen & Doud, P.C.* (by *Janice M. Conrad*), for plaintiff.

*Smith & Brooker, P.C.* (by *Gary R. Campbell*), for defendant.

Before: Wahls, P.J., and Doctoroff and Brennan, JJ.

Wahls, P.J. Plaintiff, Universal Underwriters Insurance Company, appeals from a May 9, 1988, order of the Saginaw Circuit Court granting a motion for summary disposition brought by defendant, Jesus Ernesto Vallejo. We reverse the order of the trial court and remand the case for further proceedings as to plaintiff's claim for breach of a bailment contract.

The record reveals that on March 19, 1986, defendant was a customer at Martin Chevrolet Sales, Inc., in Saginaw, and requested permission to test drive a 1986 Chevrolet Camaro IROC. While test driving the vehicle, defendant was involved in an automobile accident and "totaled" the car. After absorbing a $1,000 deductible, Martin Chevrolet recovered $12,137.23 for the damage to the car under its insurance policy with plaintiff. On December 16, 1986, plaintiff, individually and as the subrogee of Martin Chevrolet, filed a lawsuit against defendant under a common-law bailment theory. On January 5, 1988, defendant filed a motion for summary disposition under MCR 2.116(C)(8) and 2.116(C)(10), claiming that "[t]he defendant's test drive of the motor vehicle with the permission of Martin Chevrolet did not constitute a bailor-bailee contract" and that "[t]he plaintiff's claims are barred by the provisions of the No Fault Act." The trial court twice delayed deciding defendant's motion in order to permit plaintiff the opportunity to amend its complaint to allege specific facts supporting its bailment claim. In its second amended complaint, filed on March 3, 1988, plaintiff alleged, among other things:

20. On or about March 19, 1986 Defendant, Jesus E. Vallejo, entered [the premises of] Plain-

tiff's Subrogor, Martin Chevrolet Sales, Inc., with the intention to "test drive" a high performance vehicle.

21. On or about March 19, 1986 Defendant, Jesus E. Vallejo, requested to "test drive" a 1986 Chevrolet Camaro IROC, which is a high performance sports car.

22. Defendant, Jesus E. Vallejo, represented that he was interested in purchasing said vehicle in order to induce Plaintiff Subrogor, Martin Chevrolet Sales, Inc., to allow him to "test drive" said high performance sports car.

23. That Defendant, Jesus E. Vallejo, expressly and/or impliedly agreed to take care of the vehicle while undergoing said test drive.

24. Defendant, Jesus E. Vallejo, expressly and/or impliedly agreed to return said vehicle to Defendant, Martin Chevrolet Sales, Inc., upon completion of the test drive.

25. Defendant, Jesus E. Vallejo, expressly and/or impliedly agreed to return said vehicle to Defendant Subrogor, Martin Chevrolet Sales, Inc., in the same condition as it was when he took possession for said test drive.

26. Relying upon the expressed and/or implied representations of Defendant, Jesus E. Vallejo, Plaintiff Subrogor, Martin Chevrolet Sales, Inc., allowed Defendant Vallejo to take possession and gave permission to test drive said vehicle.

27. Defendant Vallejo had the sole and exclusive possession and control of said high performance sports car.

28. That while said vehicle was in Defendant Vallejo's sole and exclusive possession and control, Defendant intentionally and willful [sic] and wantonly damaged the vehicle which was a "total loss" as described above.

29. Defendant, Jesus E. Vallejo, failed to return the vehicle in the same condition as a direct and proximate result from his failure to keep the property safe and free from any damage, and the above-described conduct.

30. That the above-described business relation-

ship between Defendant Vallejo and Martin Chevrolet Sales, Inc., constitutes a contract as a result of the express and/or implied bailment agreement reached between the parties.

31. That Plaintiff Subrogor Martin Chevrolet Sales, Inc., and Defendant, Jesus E. Vallejo, entered into said bailment for the benefit of the bailee.

32. As a result of Defendant, Jesus E. Vallejo's, intentional, willful and wanton and reckless acts, omissions and conduct, and breach of the bailment contract, both express and implied, damages result[ed] in the amount of Thirteen Thousand One Hundred Thirty-seven Dollars and Twenty-three Cents ($13,137.23) of which Universal Underwriters paid Twelve Thousand One Hundred Thirty-seven Dollars and Twenty-three Cents ($12,137.23) with a net salvage value of Two thousand Sixty-eight Dollars and fifty Cents ($2,068.50), leaving a total loss of Ten thousand Sixty-eight Dollars and Sixty-five Cents ($10,068.65) and Martin Chevrolet Sales, Inc. paying the One Thousand ($1,000.00) Dollar deductible.

Of the three remaining counts in plaintiff's second amended complaint, one was withdrawn by plaintiff and two were not raised, and therefore were abandoned, on appeal. *Midland v Helger Construction Co, Inc,* 157 Mich App 736, 745; 403 NW2d 218 (1987).

In granting defendant's motion for summary disposition, the trial court specified neither the specific subrule of MCR 2.116(C) upon which it relied nor the specific reasons prompting it to grant defendant's motion. The court merely stated, "I'm going to grant the motion for summary judgment [sic] in this case for the reasons requested by the defense attorney." The defense attorney had argued, among other things not now relevant, that plaintiff's second amended complaint failed to state a claim upon which relief could be granted

because it did "not [state] any specific facts other than what has already been alleged in general terms in [the] original complaint" and because it was barred by the provision in the no-fault act, MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*, which abolished tort liability for unintentionally caused loss. MCL 500.3135; MSA 24.13135.

On appeal, plaintiff first contends that the no-fault act does not bar its common-law bailment claim against defendant in this case.

The no-fault act in large measure abolished tort liability for injuries or damages arising from the ownership, maintenance, or use in Michigan of a motor vehicle. MCL 500.3135; MSA 24.13135; *Citizens Ins Co of America v Tuttle,* 411 Mich 536, 544-547; 309 NW2d 174 (1981). However, the act did not abolish contractual liability for losses arising from the use of a motor vehicle. *National Ben Franklin Ins Co v Bakhaus Contractors, Inc,* 124 Mich App 510; 335 NW2d 70 (1983); *Kinnunen v Bohlinger,* 128 Mich App 635; 341 NW2d 167 (1983); *Hengartner v Chet Swanson Sales, Inc,* 132 Mich App 751, 758; 348 NW2d 15 (1984). In the present case, plaintiff sought to impose liability against defendant for losses incurred as a result of defendant's breach of a bailment contract. It follows, therefore, that plaintiff's contract claim was not barred by the no-fault act.

Second, plaintiff contends that its second amended complaint sufficiently stated a cause of action for breach of a bailment contract to survive defendant's motion for summary disposition under MCR 2.116(C)(8). Regarding this court rule, this Court has stated:

A motion for summary disposition brought under MCR 2.116(C)(8), failure to state a claim upon which relief can be granted, is tested by the plead-

ings alone and examines only the legal basis of the complaint. The factual allegations in the complaint must be accepted as true, together with any inferences which can reasonably be drawn therefrom. Unless the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery, the motion should be denied. *Beaudin v Michigan Bell Telephone Co,* 157 Mich App 185, 187; 403 NW2d 76 (1986). However, the mere statement of the pleader's conclusions, unsupported by allegations of fact upon which they may be based, will not suffice to state a cause of action. *Nu Vision v Dunscombe,* 163 Mich App 674, 681; 415 NW2d 234 (1988), lv den 430 Mich 875 (1988). [*Roberts v Pinkins,* 171 Mich App 648, 651; 430 NW2d 808 (1988).]

The term "bailment" has been defined by this Court as follows:

"Bailment," in its ordinary legal signification, imports the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished. *In re George L Nadell & Co, Inc,* 294 Mich 150, 154; 292 NW 684 (1940); *National Ben Franklin Ins Co v Bakhaus Contractors, Inc,* 124 Mich App 510, 512, n 2; 335 NW2d 70 (1983). Phrased another way, it is a relationship wherein a person gives to another the temporary use and possession of property other than money, the latter agreeing to return the property to the former at a later time. *Godfrey v City of Flint,* 284 Mich 291, 295-296; 279 NW 516 (1938). [*Goldman v Phantom Freight, Inc,* 162 Mich App 472, 479-480; 413 NW2d 433 (1987), lv den 429 Mich 867 (1987).]

That a bailment contract may be created under circumstances such as those present in this case is not in any way surprising. Defendant was given

the temporary use of the car owned by Martin Chevrolet for the special purpose of test driving it. Clearly, an implicit, though perhaps unwritten, prerequisite of such use was that defendant agreed to return the car in the same condition it was in when driven away from the dealership. Thus, it has been stated:

> When the owner of an automobile gives possession of it, with permission to operate it, to another person, a contract of bailment is created. [*Baugh v Rogers*, 24 Cal 2d 200, 214; 148 P2d 633 (1944).]
> Two basic rules regarding the liability of an automobile dealer for the negligent operation by a prospective purchaser, or one acting for him, of a car owned by the dealer, appear immediately from the most cursory inspection of the cases. The first of these is that the dealer is not liable if the negligent operation occurs while the purchaser, or the person acting in his stead, is driving the car unaccompanied by the dealer or any representative of the dealer. In such cases it is generally said that the relationship of master and servant or principal and agent does not exist between the dealer and the driver. *The relationship is said to be, instead, one of bailment,* with resulting applicability of the rule that a bailor (i.e., the dealer) is not liable for the negligence of his bailee (i.e., the prospective purchaser). [Emphasis added; Anno: *Dealer's liability for negligent operation of car by prospective purchaser or one acting for him,* 31 ALR2d 1445, 1448.]
> A bailment relation with all the attendant legal incidents does not necessarily arise from an express agreement. It may be implied in fact or in law. While it is commonly said that a bailment is created by delivery of personalty to one person by another to be dealt with in specie as the property of such other person under a contract, express or implied, the word "contract" is used in a broad sense. No particular ceremony or actual meeting of minds is necessary—the mutuality essential to

the contractual feature may be created by operation of law as well as by acts of the parties with intention to contract. If one, without the trespass that characterizes ordinary larceny, comes into possession of any personalty of another and is duty bound to exercise some degree of care to preserve and restore the thing to such other or to some person for that other, or otherwise to account for the property as that of such other, according to circumstances, he is a bailee. The obligations and duties must of necessity be governed by general custom, usage, and practice. [8 Am Jur 2d, Bailments, § 62, p 798.]

In this case, we have little difficulty indeed in concluding that, in accepting plaintiff's factual allegations and the reasonable inferences drawn therefrom as true, plaintiff's claim of breach of bailment contract is not so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. Plaintiff's allegations are more than mere conclusions and are supported by pertinent and specific factual assertions, such as that defendant requested to test drive the car and "expressly and/or impliedly agreed to return said vehicle . . . in the same condition as it was [in] when he took possession for said test drive."

Accordingly, we conclude that the trial court erred in granting defendant's motion for summary disposition under MCR 2.116 (C)(8).

Finally, plaintiff contends on appeal that its second amended complaint raised genuine issues of material fact sufficient to survive defendant's motion for summary disposition under MCR 2.116 (C)(10). Regarding that court rule, this Court has stated:

A motion for summary disposition brought un-

der MCR 2.116(C)(10), based on the lack of a genuine issue of material fact, tests whether there is factual support for the claim. In ruling on the motion, the trial court must consider the affidavits, pleadings, depositions, admissions and other documentary evidence submitted by the parties. MCR 2.116(G)(5). The opposing party must show that a genuine issue of fact exists. Giving the benefit of all reasonable doubt to the opposing party, the trial court must determine whether the kind of record that might be developed would leave open an issue upon which reasonable minds could differ. *Weeks v Bd of Trustees, City of Detroit General Retirement System,* 160 Mich App 81, 84; 408 NW2d 109 (1987). A reviewing court should be liberal in finding that a genuine issue of material fact exists. *Rizzo v Kretschmer,* 389 Mich 363, 372; 207 NW2d 316 (1973). A court must be satisfied that it is impossible for the claim or defense to be supported at trial because of some deficiency which cannot be overcome. *Rizzo, supra* at 371.

The party opposing a motion for summary disposition has the burden of showing that a genuine issue of disputed fact exists. *Fulton v Pontiac General Hosp,* 160 Mich App 728, 735; 408 NW2d 536 (1987). The opposing party may not rest upon mere allegations or denials in the pleadings but must, by affidavit or other documentary evidence, set forth specific facts showing that there is a genuine issue for trial, MCR 2.116(G)(4). Should the opposing party fail to make such a showing, summary disposition is appropriate. *Fulton, supra* at 375-376; *Rizzo, supra* at 372. [*Metropolitan Life Ins Co v Reist,* 167 Mich App 112, 118-119; 421 NW2d 592 (1988), lv den 431 Mich 876 (1988).]

To the extent that the trial court based its decision to grant defendant's motion for summary disposition on MCR 2.116(C)(10), we find that it erred. First, at the April 18, 1988, hearing on defendant's motion, both the trial court and defense counsel acknowledged that defendant's mo-

tion was based on plaintiff's failure to state a claim on which relief could be granted, i.e., on MCR 2.116(C)(8), and not on the absence of any genuine issue of material fact, i.e., on MCR 2.116(C)(10). At that hearing, the following discussion was recorded:

> [*The Court:*] Now, your motion today is based upon failure to state a cause in regard to that amended complaint in regard to the bailment?
> *Mr. Campbell* [defense counsel]: Yes, your Honor. In our motion I did address the other counts. First of all I argued that they be stricken since it directly violated the Court's order. Then I want to address the issue on its merits in argument that they did not state a cause of action under the particular count.

By asserting in open court that defendant's motion was based on subrule (C)(8), not (C)(10), defense counsel waived the right to rely on (C)(10) on appeal. *Kohn v Ford Motor Co,* 151 Mich App 300, 310; 390 NW2d 709 (1986), lv den 428 Mich 851 (1987); *In re Forfeiture of $28,088,* 172 Mich App 200, 206; 431 NW2d 437 (1988). Second, defendant's own motion states that "plaintiffs [sic] have not stated a cause of action under the facts and law of this case under a bailment theory," but fails to make any similar statement regarding an absence of a genuine issue of material fact. Third, defendant himself failed to file any affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in his motion, as is required under MCR 2.116(G)(3)(b) "when judgment is sought based on subrule (C)(10)." And, finally, where matters concerning a contract of bailment are in dispute or the evidence is not clear or is conflicting, the matters must be resolved by a trier of fact. See *Goldman, supra; The Gray Ea-*

*gles, Inc v Lucchesi,* 37 Mich App 322; 194 NW2d 373 (1971); *LaPlante v DuPont,* 223 Mich 343; 193 NW 820; 31 ALR 694 (1923).

The trial court's May 9, 1988, order is reversed and the case is remanded for further proceedings as to plaintiff's claim against defendant for breach of a bailment contract. See *The Gray Eagles, Inc v Lucchesi,* 50 Mich App 82; 212 NW2d 749 (1973). We do not retain jurisdiction.

Reversed and remanded.