UNIVERSAL UNDERWRITERS INSURANCE COMPANY v KNEELAND

Docket No. 201034. Submitted September 2, 1998, at Grand Rapids. Decided May 28, 1999, at 9:10 A.M. Leave to appeal sought.

Universal Underwriters Insurance Company, as subrogee of Betten Toyota, and Betten Toyota brought an action in the 8th District Court against Nancy Kneeland. Universal, the automobile insurer of a courtesy car owned by Betten Toyota, sought the amount it paid for the repair of collision damage to the courtesy car, which damage was sustained while it was in the possession of Kneeland. Betten Toyota sought the collision insurance deductible under the policy. A written agreement between Kneeland and Betten Toyota provided that Kneeland would assume all responsibility for damage to the courtesy car while it was in her possession. The court, Vincent C. Westra, J., granted summary disposition for Kneeland on the basis of *Universal Underwriters Ins Co v Stout*, unpublished opinion per curiam of the Court of Appeals, issued February 2, 1996 (Docket No. 171069), and *Universal Underwriters Ins Co v Vallejo*, 436 Mich 873 (1990), rev'g 179 Mich App 637 (1989), in which it was held that, notwithstanding an allegation of an implied contract of bailment providing for the return of a loaned automobile in the condition it was taken, by operation of MCL 257.520(b)(2); MSA 9.2220(b)(2) and MCL 500.3009; MSA 24.13009, a permissive driver of an automobile insured by its owner is typically insured under the owner's policy. The Kalamazoo Circuit Court, William G. Schma, J., affirmed. Universal and Betten Toyota appealed by leave granted.

The Court of Appeals *held*:

Universal and Betten Toyota have a valid contractual right of recovery, independent of any rights based on tort or bailment, that is unaffected by the liability-limiting provisions of the no-fault act.

1. The no-fault act abrogated tort liability arising from the ownership, maintenance, or use of a motor vehicle, except with respect to certain circumstances that are inapplicable to this case, but did not abolish contractual liability. Universal and Betten Toyota's claim that Kneeland was contractually liable for damage to the courtesy car while it was in her possession is not barred by the no-fault act.

2. *Vallejo* is distinguishable from and does not govern this case. *Vallejo* involved a claim of breach of an implied contract of bailment to return the automobile in the condition it was taken, whereas this case involves a claim of breach of a written contract by which Kneeland agreed to assume responsibility for damage to the courtesy car while it was in her possession. In *Vallejo*, the Supreme Court rejected the plaintiff insurer's effort to convert a simple, permissive-user, tort-liability case into a contract case by alleging bailment without providing specific factual allegations that would support a bailment. The Supreme Court's order in *Vallejo* is not a blanket rejection of all contract claims seeking to hold a permissive user responsible for damage to a borrowed vehicle.

3. The grant of summary disposition for Kneeland must be reversed. The case must be remanded to the district court for the entry of a judgment in favor of Universal and Betten Toyota or for further proceedings if Kneeland has any defenses that have not been addressed by the district court.

Reversed and remanded.

INSURANCE — NO-FAULT — CONTRACTUAL LIABILITY.

The no-fault act abrogated tort liability arising from the ownership, maintenance, or use of a motor vehicle, except for certain limited circumstances, but did not abolish contractual liability (MCL 500.3135; MSA 24.13135).

*Garan, Lucow, Miller, Seward & Becker, P.C.* (by *David N. Campos* and *Daniel S. Saylor*), for the plaintiffs.

*Bensinger, Cotant, Menkes & Aardema, P.C.* (by *Dale L. Arndt*), for the defendant.

Before: CAVANAGH, P.J., and MURPHY and WHITE, JJ.

WHITE, J. Plaintiffs, Universal Underwriters Insurance Company and Betten Toyota, appeal by leave granted the circuit court's order affirming the district court's grant of summary disposition to defendant, Nancy Kneeland. We reverse and remand.

I

The facts are undisputed. On November 15, 1993, defendant took her car to Betten Toyota to be repaired. On November 16, 1993, Betten Toyota loaned defendant a "courtesy car," a 1991 Previa, while her car was being repaired. On that date, defendant and a Betten Toyota employee signed a form entitled "Courtesy Car Agreement" that stated five terms:

1. Rental fee ONLY $28.00 per day.

2. Renter agrees to replace gasoline used.

3. Renter agrees to pay cash for rental charge.

4. Renter agrees to assume all responsibility for damages while vehicle is in his possession.

5. Renter agrees not to sublet or loan the car to anyone.

On November 20, 1993, while defendant was driving the Previa and was stopped at an intersection, two other vehicles collided and caused damage to the Previa. There is no claim that defendant was negligent. Universal paid $3,738.49 for the damage to the van, pursuant to an insurance policy it had issued to Betten Toyota, and became subrogated to Betten Toyota's rights. Betten Toyota paid the $1,000 deductible under the policy. Universal requested reimbursement from defendant, which she denied, and then filed suit against defendant alleging breach of contract. Betten Toyota later joined the case,[1] seeking to recover its $1,000 deductible.

Universal filed a motion for summary disposition, relying on the express terms of the courtesy-car

---

[1] The parties stipulated the consolidation of Betten Toyota's claim with that of Universal Underwriters.

agreement. It reasoned that although the no-fault act abolished tort liability for the damage at issue, MCL 500.3135; MSA 24.13135, defendant's contractual liability remained. Universal directed the district court's attention to a Kent County case, *Universal Underwriters Ins Co v Stout*, No. 92-78508 AV, in which, on almost identical facts, the circuit court ruled in favor of the plaintiff insurer.

In response, defendant asserted, inter alia, that plaintiffs were precluded from seeking recovery from defendant under *Universal Underwriters Ins Co v Vallejo*, 436 Mich 873 (1990), rev'g 179 Mich App 637; 446 NW2d 510 (1989),  in which the Supreme Court held that an automobile dealership's subrogee could not maintain an action under an implied or express contractual bailment theory to seek recovery from a potential customer who was involved in an accident while test driving a dealership vehicle. Defendant also argues that Betten Toyota committed fraud by failing to inform defendant that she would not be covered under Betten Toyota's insurance, and that the agreement was ambiguous. Defendant requested that summary disposition be denied to plaintiffs and granted to her.

During the time the district court had the matter under advisement, this Court reversed the circuit court's decision in the *Stout* case. *Universal Underwriters Ins Co v Stout*, unpublished opinion per curiam, issued February 2, 1996 (Docket No. 171069). The district court followed this Court's decision in *Stout* and granted summary disposition to defendant, dismissing Universal's claim.

After the parties stipulated that Betten Toyota's claim would be governed by the outcome of the final

ruling on Universal's claim, plaintiffs filed an appeal in the circuit court. The circuit court upheld the district court's decision,[2] and this Court granted plaintiffs' application for leave to appeal.

---

[2] The circuit court said:

[T]he no-fault system is designed as a substitute for common law tort remedies. Nothing in the no-fault system relieves a motor vehicle operator of liability that she may have incurred in contract.

\* \* \*

[T]hat's an attractive proposition. And, frankly, I'm inclined, to a large extent, to agree with it. But, on the other hand, it . . . does not appear to be . . . my responsibility to change the law in the state of Michigan. . . . I feel constrained to follow the opposite line of cases which is most directly set forth in [*Universal Underwriters Ins Co v Vallejo, supra*] which is also relied upon, although it's not controlling it certainly is persuasive because it deals with the exact situation that we have here of the *Stout* decision where a permissive user signed an express contract assuming responsibility for damages.

\* \* \*

And, *Stout* said, our Supreme Court noted in *Vallejo* that allegations of an express or implied contract [of] bailment did not differentiate the case from any other where a permissive driver of a car is involved in a collision.

\* \* \*

[T]he reason for all this is the no-fault law, or the statute which is relied on is [MCL] 257.520(b)(2) [MSA 9.2220(b)(2)] which requires that every policy of liability insurance insure the named insured and any other permissive driver liability imposed by law for damages arising out of the ownership maintenance or use of the vehicle. Although the statute cited by the Supreme Court does not specifically apply to collision damages the Supreme Court applied it in *Vallejo* where collision damages were at issue, and they found the decision to be controlling; I do, as well.

II

Plaintiffs argue that because defendant was loaned an automobile on the basis of her express agreement to assume all responsibility for any damage to the vehicle, plaintiffs have a valid contractual right of recovery, independent of any rights based on tort or bailment, that is unaffected by the liability-limiting provisions of the no-fault act. Plaintiffs maintain that *Vallejo*[3] is not applicable because it involved a bailment, which gives rise only to a fault-based claim for recovery, and did not involve an express contract, and because statutorily mandated liability coverage is different from the optional collision coverage involved here. We agree.[4]

A

The no-fault act abrogated tort liability arising from the ownership, maintenance, or use of a motor vehicle, except with respect to certain circumstances that are inapplicable here,[5] but did not abolish contractual

---

[3] The *Stout* Court relied on *Vallejo* in reversing the grant of summary disposition to the plaintiffs. The district court in the instant case relied on *Stout*, and the circuit court relied on *Stout* and *Vallejo*. As noted above, *Stout* is an unpublished opinion of this Court and is of no precedential value. It is mentioned only because it was relied on by the district and circuit courts, and it will not be discussed further.

[4] We recognize that *Vallejo* also involved collision coverage but do not read *Vallejo* as having been decided on the basis of any statutory requirements. See subsection II, B, 3, *infra*.

[5] MCL 500.3135(3); MSA 24.13135(3), formerly MCL 500.3135(2); MSA 24.13135(2), provides in pertinent part:

Notwithstanding any other provision of law, *tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle* with respect to which the security required by section 3101 was in effect *is abolished* except as to:

(a) Intentionally caused harm to persons or property. . . .

liability. *Kinnunen v Bohlinger*, 128 Mich App 635, 638; 341 NW2d 167 (1983); *Nat'l Ben Franklin Ins Co v Bakhaus Contractors, Inc*, 124 Mich App 510, 513; 335 NW2d 70 (1983).

In *Kinnunen, supra*, the plaintiffs agreed to allow the defendants to use a horse trailer to transport a pony. The trailer was damaged in an automobile accident while in the defendants' possession. The plaintiffs brought a suit alleging breach of contract, including breach of an agreement to return the trailer in the same condition as when taken, and breach of a specific contract to repair the damaged trailer. The defendants brought a motion for summary disposition, asserting that the plaintiffs' claim was barred by the no-fault act. The circuit court granted the motion, but this Court reversed, stating in pertinent part:

> This case presents a unique question: Does the Michigan no-fault automobile insurance act bar an action for recovery of property damages arising out of a motor vehicle accident, where the parties entered into a legally enforceable contract both before and after the accident making defendants responsible for returning a trailer in an undamaged state?
>
> There is no question that, absent the no-fault act, plaintiffs and defendants had the right to enter into an enforceable contract whereby plaintiffs would promise to provide the benefits of their trailer to defendants in consideration

(b) Damages for noneconomic loss as provided and limited in subsections (1) and (2).

(c) Damages for allowable expenses, work loss, and survivor's loss as defined in sections 3107 to 3110 in excess of the daily, monthly, and 3-year limitations contained in those sections. . . .

(d) Damages up to $500.00 to motor vehicles, to the extent that the damages are not covered by insurance. An action for damages pursuant to this subdivision shall be conducted in compliance with subsection (4). [Emphasis added.]

for defendants' promise to assume all liability for any damages that might occur to said trailer while in defendants' possession. Since we are reviewing an order for summary judgment . . . we assume that factual developments would establish the existence of a contract or contracts.

However, MCL 500.3135(2); MSA 24.13135(2) provides that tort liability arising from the ownership, maintenance, or use within the state of a motor vehicle is abolished except as to certain circumstances which are inapplicable herein. It is this provision upon which defendants and the trial court relied in concluding that plaintiffs' action was barred. . . .

. . . [H]aving reviewed plaintiffs' complaint, we find [unlike the trial court] that plaintiffs premised their theory of recovery upon defendants' failure to comply with the terms of a contractual agreement and not upon defendants' negligent ownership, maintenance, or use of a motor vehicle, although it was through defendants' use of a motor vehicle that damages were incurred. Therefore, we find that plaintiffs' claim is not barred.

In so ruling, we adhere to the principle that statutes which abolish the common law should be narrowly construed. MCL 500.3135; MSA 24.13135 clearly and unequivocally states that "tort liability" is partially abrogated. The term "tort liability" is clear and unambiguous and does not include liability that may arise out of a legally enforceable contract. Had the Legislature intended to abrogate contractual liability as well, the words *any* "liability arising out of the ownership, maintenance, or use of a motor vehicle" could easily have been substituted. We conclude that under a straightforward reading of the statutory language of § 3135 of the no-fault act, contractual liability is not abolished by said section even where said liability arises out of the ownership, maintenance, or use of a motor vehicle. [*Id.* at 637-639 (citation omitted).]

Similarly, in *Ben Franklin, supra,* the plaintiff insurer's subrogor, an equipment company, owned a loader that it loaned to the defendant. The defendant loaded the loader onto its tractor, and, while the

loader was being transported on a public roadway, it struck an overpass and was extensively damaged. The plaintiff insurer paid for the damage and then brought an action against the defendant, alleging negligence, breach of express and implied warranties, and breach of the bailment agreement. The defendant argued in a motion for summary judgment that the plaintiff's claims were barred by the no-fault act. The circuit court granted the motion. However, this Court reversed, noting:

Plaintiff argues first that since MCL 500.3123(1); MSA 24.13123(1) excludes damages to the contents of vehicles operated upon a public highway from property protection insurance benefits under the no-fault act, plaintiff is entitled to pursue its common-law tort remedies. We agree that the loader was a content of defendant's tractor at the time of the accident. The damage to the loader, however, arose out of defendant's use of its tractor as a motor vehicle. Tort liability for property damage arising from the use of a motor vehicle in this state has been abolished, unless the damage is intentionally caused. MCL 500.3135; MSA 24.13135; *Citizens Ins Co of America v Tuttle*, 411 Mich 536, 544; 309 NW2d 174 (1981). Thus, defendant is not liable in tort for damage to the loader which may have been caused by defendant's negligent operation of its tractor.

Plaintiff argues next that even if its cause of action in tort based on alleged negligent operation of a motor vehicle is barred by the no-fault act, its alternative theories state claims upon which relief can be granted. Plaintiff has not taken pains to explain its alternative theories on appeal. While we note that bailment actions sound in property law and breach of warranty actions sound in contract, plaintiff argues on appeal that it is seeking recovery for property damage which arose out of defendant's breach of "its warranties or duties under its contract of bailment." In this case, therefore, it appears that plaintiff's breach of warranties theory is inseparable from its bailment theory, plaintiff's claim being based on contract principles.

We agree that the no-fault act does not abolish contractual liability. . . . Nothing in the no-fault system relieves a motor vehicle operator of liability which he may have incurred in contract. It was within the powers of the contracting parties to agree on which party would assume the risk of damage to the loader. Plaintiff's theory that defendant breached express and implied warranties in the governing contract of bailment does, therefore, state a claim upon which relief can be granted. [*Ben Franklin, supra* at 511-513.][6]

B

These authorities notwithstanding, defendant relies on the Supreme Court's order of peremptory reversal in *Vallejo, supra.*

1

The defendant in *Vallejo* was a potential customer of an automobile dealership who was involved in an accident while test driving a vehicle. The dealer's

---

[6] See also *Hengartner v Chet Swanson Sales, Inc*, 132 Mich App 751; 348 NW2d 15 (1984), which involved the question whether the no-fault act or the Motor Vehicle Service and Repair Act, MCL 257.1301 *et seq.*; MSA 9.1720(1) *et seq.*, controlled when an owner sued the service facility that repaired the brakes on her automobile. The repair shop relied on § 3135 of the no-fault act to disclaim liability. This Court held that the service and repair act was controlling because it was both more specific and more recent, *Hengartner, supra* at 756, and further stated:

Finally, we note that *MCL 500.3135; MSA 24.13135 does not bar actions based on breach of contract or breach of warranty. . . .* Nonfeasance of a contractual obligation supports only an action on the contract; misfeasance of a contractual obligation or breach of a duty distinct from a contract can support an action on both tort and contract theories. . . . Here, *plaintiff's complaint alleged a contractual relationship between the parties, and the allegations in the complaint are sufficient to support recovery on contract theories* as well as on tort theories. [*Hengartner, supra* at 758 (emphasis supplied).]

insurer paid for the damage to the vehicle (less the dealer's deductible) and brought a subrogation action against the defendant customer. The complaint alleged that the defendant "expressly and/or impliedly" agreed to return the vehicle "in the same condition as it was when he took possession" and that he "fail[ed] to keep the property safe and free from any damage." 179 Mich App 640. It further alleged:

> That the above-described business relationship between Defendant Vallejo and Martin Chevrolet Sales, Inc., constitutes a contract as a result of the express and/or implied bailment agreement reached between the parties. [*Id.* at 640-641.]

The defendant moved for summary disposition, arguing that the defendant's test drive of the vehicle with the permission of Martin Chevrolet did not constitute a bailor-bailee contract and that the plaintiff's claims were barred by the no-fault act. *Id.* at 639. The circuit court granted the defendant's motion. This Court reversed, stating that "the [no-fault] act did not abolish contractual liability for losses arising from the use of a motor vehicle." The Court explained:

> In the present case, plaintiff sought to impose liability against defendant for losses incurred as a result of defendant's breach of a bailment contract. It follows, therefore, that plaintiff's contract claim was not barred by the no-fault act. [*Id.* at 642.]

This Court further stated:

> That a bailment contract may be created under circumstances such as those present in this case is not in any way surprising. Defendant was given the temporary use of the car owned by Martin Chevrolet for the special purpose of

test driving it. Clearly, an implicit, though perhaps unwritten, prerequisite of such use was that defendant agreed to return the car in the same condition it was in when driven away from the dealership. [*Id.* at 643-644.]

The opinion also quotes from 8 Am Jur 2d, Bailments, § 62, p 798  the statement that " 'the word "contract" is used in a broad sense.' " 179 Mich App 644. The Court concluded that the dealer's insurer had stated a valid claim for a "breach of bailment contract." *Id.* at 645.

The Supreme Court, however, peremptorily reversed:

In lieu of granting leave to appeal, the August 21, 1989, judgment of the Court of Appeals is reversed, and the case is remanded to the Saginaw Circuit Court for entry of judgment in favor of the defendant. MCR 7.302(F)(1). Although the trial court gave the plaintiff insurer numerous opportunities to explain, with specific factual allegations, how its conclusory allegation of an express or implied contract of bailment differentiated this case from any other situation in which a permissive user of a car is involved in a collision and therefore cannot return the car to its owner in an undamaged condition, the plaintiff repeatedly failed to do so. Under these circumstances, we think the trial court correctly granted the defendant's motion for summary disposition. By operation of the pertinent insurance statutes, e.g., MCL § 257.520(b)(2); MSA § 9.2220(b)(2)[7] and MCL

---

[7] Section 520 of the financial responsibility act provides in pertinent part:

(a) A "motor vehicle liability policy" as used in this chapter, shall mean an owner's or operator's policy of liability insurance, certified . . . as proof of financial responsibility, and issued . . . by an insurance carrier duly authorized to transact business in this state . . . .

(b) Such owner's policy of liability insurance:

\*   \*   \*

§ 500.3009; MSA § 24.13009[8], the defendant appears to have been insured by the plaintiff against the very loss at issue in this case, since a standard automobile policy typically insures such a permissive driver "against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of" a motor vehicle. [436 Mich 873.]

Relying on this Court's unpublished decision in *Stout*, defendant argues that the instant case is controlled by *Vallejo*, and that in *Vallejo* the Supreme Court concluded that allegations of an express or implied contract of bailment did not differentiate the case from any other where a permissive driver of a car is involved in a collision, so that, in the instant case, the presence of an express contract is irrelevant. We disagree.

2

*Vallejo* is distinguishable from and does not govern the instant case. Unlike the instant case, there is no

---

(2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle . . . as follows: $20,000 because of bodily injury to or death of 1 person in any 1 accident . . . .

[8] MCL 500.3009; MSA 24.13009 provides in pertinent part:

(1) An automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for property damage, bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall not be delivered or issued . . . unless the liability coverage is subject to a limit, exclusive of interest and costs, of not less than $20,000 because of bodily injury to or death of 1 person in any 1 accident . . . .

indication that there was an express contract in *Vallejo*. The plaintiff insurer in *Vallejo* sought to recover from the customer who test drove the vehicle under a common-law bailment theory, 179 Mich App 639, while plaintiffs in the instant case sought to recover under a contract theory based on the written agreement defendant signed stating that she agreed to "assume all responsibility for damages" while the vehicle was in her possession.

Defendant erroneously equates her express agreement assuming all responsibility for damages to the vehicle with the "express or implied contract of bailment" in *Vallejo*. We do not read the Supreme Court's order in *Vallejo* as a blanket rejection of all contract claims seeking to hold a permissive user responsible for damage to a borrowed vehicle. Rather, we understand the order as rejecting the insurer's effort to convert a simple, permissive-user, tort-liability case into a contract case by alleging an express or implied contract of bailment, without providing specific factual allegations that would support such a distinction. Stated differently, in any permissive user case, except the unusual one in which a bailment is expressly disavowed, it can be alleged that there is an implied or express contract of bailment, and therefore an enforceable contractual duty. The Supreme Court declined to recognize such broad-based contractual liability in these circumstances. The Court's express reference to the insurer's failure to support with factual allegations its efforts to differentiate the case from any other permissive-user situation implies that if the insurer *had* successfully demonstrated the existence of an express contractual assumption of responsibility for damage to the vehicle, the defend-

ant might not have been granted summary disposition. Thus, *Vallejo* did not say that the existence of an express contract would not differentiate the case from any other permissive-user situation. Rather, it suggested that the potential for a different result did exist, but that the plaintiff insurer had failed to provide proof sufficient to support a different result.

We further observe that in a bailment situation, in the absence of a contractual duty to the contrary, a bailee is not an insurer of the property. *Gray Eagles, Inc v Lucchesi*, 37 Mich App 322, 323; 194 NW2d 373 (1971). Thus, the Supreme Court's reluctance to recognize an exception to the no-fault act's abrogation of tort immunity for such ordinary negligence whenever an implied or express contract of bailment is alleged, without regard to whether there is an express contractual undertaking to assume responsibility, is understandable.

3

Lastly, defendant asserts that in *Vallejo* the Supreme Court found that recovery by the insurer was precluded because the insurance statutes require coverage for permissive users. To be sure, the Supreme Court's reference in *Vallejo* to "pertinent insurance statutes, e.g., MCL 257.520(b)(2); MSA 9.2220(b)(2) and MCL 500.3009; MSA 24.13009" (see notes 6 and 7, *supra*), as operating to provide coverage to the permissive user is troubling in that the distinction plaintiffs draw, correctly in our opinion, between the mandatory coverage addressed in those provisions and the optional collision coverage involved here was present as well in *Vallejo*. Insurance coverage for vehicle collision damage is not stat-

utorily mandated and is expressly excluded from the requirements of the financial responsibility act. MCL 257.520(g);    MSA 9.2220(g). However, the *Vallejo* Court did not purport to hold that these statutes preclude enforcement of a contractual undertaking that does not contravene statutory requirements or that they require that the permissive user be covered for collision damage. Rather, the Court appeared to *assume* that the defendant was covered, stating "the defendant *appears* to have been insured by the plaintiff . . . since a standard automobile policy *typically* insures such a permissive driver . . . ." In the instant case, defendant makes no allegation that she is insured for this risk under the terms of Universal's policy, and the policy is not in the record or otherwise before this Court. Indeed, we express no opinion with regard to issues relating to the actual insurance coverage present in this case.[9] Further, defendant does not argue that her contractual undertaking violates Michigan's no-fault insurance act, MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*,    see *State Farm Mut Auto Ins Co v Enterprise Leasing Co*, 452 Mich 25; 549 NW2d 345 (1996),    and asserts only that the instant case is indistinguishable from *Vallejo* and *Stout*, which, defendant argues, hold that no action lies against a permissive user of a loaner vehicle because insurance statutes require the owner of the vehicle to provide coverage that covers permissive users. We reject this argument for the reasons stated and conclude that the district and circuit courts erred

---

[9] We also observe that it is not alleged that defendant does not have, or that a person in defendant's position would be unable to secure, insurance that would provide coverage for this risk, and no public policy argument is made to us on the basis of such an allegation.

in concluding that *Vallejo* precludes plaintiffs from maintaining an action based on defendant's express contractual undertaking in the instant case.

We reverse the grant of summary disposition in defendant's favor and remand to the district court for entry of judgment in plaintiffs' favor unless it determines that defendant has defenses that have not yet been addressed, in which case the court shall conduct proceedings consistent with this opinion. We do not retain jurisdiction.