*503 Cavanagh, J.
(dissenting). Because the majority opinion in this case is contrary to well-established principles of contract law, I must dissent. I would reverse the decision below and reinstate summary disposition in favor of the defendant.
This case presents two questions: (1) whether a party may contractually assume liability for damages to a borrowed vehicle and (2) if liability can be contractually assumed, whether the defendant assumed liability pursuant to a courtesy car agreement. I would hold that liability can be contractually shifted, but that the instant courtesy car agreement cannot be enforced to impose liability on the defendant.
i
The defendant borrowed a loaner car from Betten Toyota while Betten was servicing her vehicle. Before taking possession of the loaner car, the defendant was required to sign a document entitled “Courtesy Car Agreement.” The text of the agreement was as follows:
Courtesy Car Agreement
i — Rental fee ONLY $28.00- payday-
2. Renter agrees to replace gasoline used.
3. Renter agrees to pay cash for rental charge.
4. Renter agrees to assume all responsibility for damages while vehicle is in his possession.
5. Renter agrees not to sublet or loan the car to anyone.
The agreement was printed on Betten stationery.
The defendant was involved in an automobile accident for which she bore no fault. Rather, two other vehicles collided with each other, and the force of the impact pushed one of those vehicles into the loaner *504 car. The plaintiffs are seeking to recover collision damages. Both plaintiffs assert that the defendant is liable for the full amount of damages sustained pursuant to clause 4 of the courtesy car agreement.
The defendant asserts that Betten Toyota formed a bailment contract with her by loaning her a vehicle. She further argues that, pursuant to the bailment contract, she was shielded from liability because the no-fault act, MCL 500.3101 et seq., and financial responsibility act, MCL 257.520(g), require the owner of an automobile and the owner’s insurer to provide coverage for permissive users.
According to the plaintiffs, this case sounds purely in contract. While the no-fault act abrogated tort immunity, it did not abrogate contractual liability. The plaintiffs thus contend that the no-fault act would not bar their claims, citing Kinnunen v Bohlinger, 128 Mich App 635, 638; 341 NW2d 167 (1983); Nat’l Ben Franklin Ins Co v Bakhaus Contractors, Inc, 124 Mich App 510, 513; 335 NW2d 70 (1983).
The broader question posed by this case is whether a party may contractually assume liability for damages to a borrowed vehicle even though Michigan’s no-fault law, precedent, and common-law principles would normally place liability on the lender absent any contractual agreement to the contrary. If liability can be contractually assumed, then we must also resolve whether the defendant assumed liability pursuant to the courtesy car agreement.
The genesis of the arguments raised by the present parties can be traced to this Court’s decision in Universal Underwriters v Vallejo, 436 Mich 873 (1990). Vallejo was a peremptory reversal, which, in its entirety, provided as follows:
*505 In lieu of granting leave to appeal, the August 21, 1989, judgment of the Court of Appeals is reversed [179 Mich App 637; 446 NW2d 510 (1989)], and the case is remanded to the Saginaw Circuit Court for entry of judgment in favor of the defendant. Although the trial court gave the plaintiff insurer numerous opportunities to explain, with specific factual allegations, how its conclusory allegation of an express or implied contract of bailment differentiated this case from any other situation in which a permissive user of a car is involved in a collision and therefore cannot return the car to its owner in an undamaged condition, the plaintiff repeatedly failed to do so. Under these circumstances, the trial court correctly granted the defendant’s motion for summary disposition. By operation of the pertinent insurance statutes, e.g., MCL 257.520(b)(2); MSA 9.2220(b)(2) and MCL 500.3009; MSA 24.13009, the defendant appears to have been insured by the plaintiff against the very loss at issue in this case, since a standard automobile policy typically insures such a permissive driver “against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of" a motor vehicle. Jurisdiction is not retained. [Emphasis added.]
The defendant interprets Vallejo as holding that no express or implied bailment action lies against a permissive user of a loaner vehicle. In the defendant’s view, Vallejo was not premised on the insurer’s failure to factually establish a contractual relationship. Rather, Vallejo specifically found the lack of an express agreement to be inconsequential. The Court held that a bailment contract could not supersede the insurer’s statutory duty to supply insurance to permissive drivers.
The plaintiffs, on the other hand, argue that Vallejo is inapposite. They assert that, where the action against the defendant is purely for breach of contract and is not a tort action arising out of rights implicit in *506 a bailment relationship, Vallejo and the no-fault act do not bar plaintiffs’ claims. Instead, the plaintiffs urge us to interpret Vallejo as determining only whether a bailment could give rise to liability. While Vallejo recognized that any tort liability arising out of a bailment would be barred pursuant to the no-fault act, the plaintiffs posit that it did not foreclose the possibility that a defendant could be held liable if the parties agreed to rights and responsibilities extending beyond the bailment situation. The plaintiffs recognize Vallejo as accepting that a bailment relationship alone would not shift liability to the defendant, but they argue that Vallejo actually held only that the plaintiff failed to prove the existence of any rights beyond those that would exist in a bailment situation.
ii
The Court of Appeals noted that the no-fault act bars tort liability but not contractual liability, and held that the defendant could be bound by her agreement to assume all responsibility for damages while the vehicle was in her possession. 235 Mich App 658-659. It then distinguished Vallejo from this case on the ground that Vallejo did not involve an express contract. Further, the Court expressly stated that Vallejo was not intended to shield permissive users from liability expressly assumed by contract. The Court wrote:
[I]n any permissive user case, except the unusual one in which a bailment is expressly disavowed, it can be alleged that there is an implied or express contract of bailment, and therefore, an enforceable contractual duty. The Supreme Court declined to recognize such broad-based contractual liability in these circumstances. The Court’s express refer *507 ence to the insurer’s failure to support with factual allegations its efforts to differentiate the case from any other permissive-user situation implies that if the insurer had successfully demonstrated the existence of an express contractual assumption of responsibility for damage to the vehicle, the defendant might not have been granted summary disposition. Thus, Vallejo did not say that the existence of an express contract would not differentiate the case from any other permissive-user situation. Rather, it suggested that the potential different result did exist, but that the plaintiff insurer had failed to provide proof sufficient to support a different result. [235 Mich App 659-660 (emphasis in original).]
After determining that Vallejo was not intended to bar all contract claims brought against permissive users, the Court of Appeals concluded that plaintiffs could assert a contract claim against the defendant because of her express assumption of liability. Therefore, the Court reversed the circuit court’s affirmance of summary disposition for the defendant.
in
I agree with the Court of Appeals that Vallejo should not be read as “a blanket rejection of all contract claims seeking to hold a permissive user responsible for damage to a borrowed vehicle.” 235 Mich App 659. While Vallejo limited the extent to which liability can be shifted to a permissive driver of a loaned automobile, it did so under circumstances where the insurer had failed to assert a factual basis for its contract claim. The Court’s order recognized the general rule that a bailee must return property to his bailor in an undamaged condition. However, Vallejo then recognized that Michigan’s pertinent insurance statutes, MCL 257.520(b)(2) and MCL 500.3009, modify the gen *508 eral rule. Through those statutes, the Legislature chose to offset the costs and problems associated with automobile collisions by requiring that automobile owners cany insurance. Vallejo recognized that standard automobile policies contain language covering use by permissive drivers, and held that the plaintiff insurer had failed to prove that liability had somehow been shifted back to the defendant.
I interpret Vallejo as holding that the lender, rather than the permissive user, must pay for collision damages under the lender’s insurance policy unless: (1) it is proven that the policy does not extend to permissive drivers, or (2) the lender or insurer carries his burden of differentiating his case from the usual situation where a permissive user of a car is involved in a collision. The plaintiffs’ own brief categorizes its claim as “squarely one for breach of contract.” Thus, this is not a case where the insurer refused to pay on the grounds that the driver was not covered by the terms of the policy between the insured and the dealer. Instead, the complaint alleged that the contract between Betten and Kneeland shifted liability to Kneeland. When she refused to pay, she allegedly breached the courtesy car agreement. Therefore, this case hinges on the second Vallejo inquiry. Pursuant to Vallejo, the plaintiffs must prove that the courtesy car agreement differentiates this case from the usual situation where a permissive user of a car is involved in a collision.
The plaintiffs claim that this case can be distinguished from Vallejo because the instant defendant assumed all responsibility for damages. While I agree with the plaintiffs that Vallejo does not automatically bar recovery in cases where the lender proves that *509 the permissive driver has assumed liability pursuant to a valid contract, I do not agree that liability was shifted in the present case.
The majority acknowledges the potential shift of tort liability that could occur were this Court to hold that the contract is unambiguous as the plaintiffs suggest. Because of the potential problem, the majority offers another “reasonable interpretation of the contract.” Ante at 497. In the majority’s words, “[t]he parties may reasonably have intended to limit the meaning of the word ‘damages’ to losses for which a legal right of recovery is available.” Ante at 497.
I agree with the majority that the courtesy car agreement in this case is ambiguous, and may be interpreted in a fashion that would avoid illegality. However, I disagree strongly with the majority’s decision to construct a decision favorable to the plaintiffs, rather than construing the contract against the drafter, as we are bound to do. See, e.g., Vanguard Ins Co v Clarke, 438 Mich 463, 471-472; 475 NW2d 48 (1991); Raska v Farm Bureau Mut Ins Co, 412 Mich 355, 361-362; 314 NW2d 440 (1982). See also 2 Restatement Contracts, 2d, § 206, p 105 (“In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words”); 11 Williston, Contracts, § 32.12, p 471 (since the language is within the control of the drafter, it is a generally accepted principle that any ambiguity in that language will be interpreted against the drafter); 5 Corbin, Contracts, § 24.27, pp 282-283; 17A Am Jur 2d Contracts, § 348, pp 360-361 (It is fundamental that doubtful language in a contract should *510 be interpreted most strongly against the party who has selected the language).
Two opposing interpretations of the courtesy car agreement are offered. In the plaintiffs’ view, by signing the courtesy car agreement, the defendant agreed to be an insurer against damages to the automobile. The defendant contends that she read the agreement as meaning only that she would be responsible for her own negligence, and that she assumed that the car was insured by the dealership. Here, the drafter was Betten. Construing the agreement against Betten is proper because, as the drafter, Betten had the opportunity of drafting the language in a manner that avoided any ambiguity or dispute. Thus, I would resolve the courtesy car agreement in the defendant’s favor, in accordance with well-established contract principles.
The document was a one-page form contract to which no insurer was a party and that never mentioned insurance. The dealership never informed the defendant that she needed to obtain her own insurance, nor did it inform the defendant that she would be liable for damages caused by the negligence of others. The courtesy car agreement also did not mention collision damages. It is not unreasonable for defendant to have assumed that she would be covered by a standard automobile policy between the dealer and its insurer. In this respect, the present case is similar to Vallejo. While Vallejo left open the possibility that contractual liability could be shifted to a permissive user, Vallejo also recognized that the burden was upon the plaintiff insurer to prove that liability had been so shifted. Here, the plaintiffs point only to overbroad language that in no way mentions insur- *511 anee obligations. Thus, I would conclude that the plaintiff failed to bear its burden of proving that collision damages were validly shifted.
Contrary to the majority’s assertion, my approach is not a method of invalidating the contract. It is, instead, a recognition that, when choosing between valid constructions of an ambiguous contract, we must choose the construction that goes against the drafter of the ambiguous language. Here, the construction offered by the defendant would not invalidate the courtesy car agreement; rather, it would limit the scope of the agreement.
IV
The majority chooses to construe the contract in a manner that would be favorable to the plaintiffs who drafted the ambiguous contract. I cannot join the majority’s decision to find in favor of the plaintiffs when the agreement signed by the defendant contained a provision that must be interpreted as ambiguous or void against public policy.
I would hold that the defendant is not liable under the courtesy car agreement. The plaintiffs have failed to carry their burden of estabhshing that a valid contract existed and of differentiating this case from the usual situation where a permissive user of a car is involved in a collision. Therefore, I would reverse and reinstate summary disposition in favor of the defendant.
Weaver and Kelly, JJ., concurred with Cavanagh, J.